Donald E. HALPIN, et al., etc.,
Plaintiffs–Appellants,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Defendant–Respondent.

No. 73684.

Supreme Court of Missouri,
En Banc.

Jan. 28, 1992.

Rehearing Denied Feb. 25, 1992.

Robert E. Fulton, John Reid II, Fredericktown, for plaintiffs-appellants.

Jeffrey S. McGuire, Cape Girardeau, for defendant-respondent.

Michael A. Dallmeyer, Jefferson City, for amicus curiae, Mo. Ins. Coalition.

BLACKMAR, Judge.

Appellants Donald and Rebecca Halpin contracted with respondent American Family for liability insurance on a motor vehicle owned by the Halpins. On May 12, 1990, their two minor children, appellants Jessica and John Tyler Halpin, were riding in the insured vehicle, with Rebecca driving, when it collided with another car. In response to an inquiry by the attorney representing the children, the insurer stated that it would deny coverage of a claim by the children for injuries caused by Rebecca's negligence on the authority of a contract exclusion reading as follows:

This coverage does not apply to:

\* \* \* \* \* \*

10. Bodily injury to:

a. You, a relative or any other person injured while operating your insured car;

b. Any person related to you and residing in your household; or

c. Any person related to the operator and residing in the household of the operator.

Donald and Rebecca then brought an action individually and as next friends for the children, seeking a declaration that the "household exclusion clause" is void as contrary to public policy. The trial court entered judgment for the insurer. The Court of Appeals, Eastern District, affirmed but transferred the case here because of speculation about the effect of supervening legislation on our holding in *American Family Mutual Insurance Company v. Ward,* 789 S.W.2d 791 (Mo. banc 1990). *See Ward,* 789 S.W.2d at 796 (Covington, J. concurring). We conclude that the Motor Vehicle Financial Responsibility Law, §§ *303.010–303.370, RSMo 1986,* effects a partial invalidity of clauses such as are quoted above, and so reverse the judgment and remand for further consistent proceedings.

It is necessary to consider the history of the governing legislation. The Motor Vehicle Safety Responsibility Law, §§ *303.010–303.370, RSMo 1978, L.1953, p. 569* (as amended §§ *303.010–303.370, RSMo 1986, L.1986, S.B. 424* ), was not a compulsory insurance law. It rather required the owner of a motor vehicle involved in an accident resulting in more than $500 of damages to provide proof of financial responsibility, under pain of suspension of operator's license. *Ward* held that this law did not have the effect of invalidating household exclusion clauses, even though intervening decisions had abolished the doctrine of spousal immunity.

The Motor Vehicle Financial Responsibility Law was enacted in 1986. It repealed only certain sections of the Safety Responsibility Law. In a way made necessary by the statutory timetable, bound volume three of the 1986 revised statutes shows the repealed sections of the old law side-by-side with the corresponding sections of the new law, unchanged sections of the existing law, and sections added by the new law. The new law, in contrast to the old, requires the owner of a motor vehicle to maintain "financial responsibility" without regard to driving history. The pertinent parts of § *303.025, RSMo 1986,* read as follows:

1. No owner of a motor vehicle registered in this state shall operate the vehicle, or authorize any other person to operate the vehicle, unless the owner maintains the financial responsibility as required in this section. Furthermore, no person shall operate a motor vehicle owned by another with the knowledge that the owner has not maintained finan-

cial responsibility unless such person has financial responsibility which covers his operation of the other's vehicle.

2. A motor vehicle owner shall maintain his financial responsibility in a manner provided for in section 303.160, or with a motor vehicle liability policy which conforms to the requirements of the laws of this state.

The appellants rely on § *303.190*, a part of the old law, which was not changed in any way by the amending legislation. *Subsection 2* of that section reads as follows:

Such owner's policy of liability insurance:

(1) Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident.

They contend that public policy requires that a contract of liability insurance provide the coverage indicated in § *303.190* so that the insured will be in compliance with § *303.025*. We agree. *Section 303.190* specifies the minimum coverage that will comply with § *303.025*, as being insurance against "loss from the liability imposed by law...." The Halpins and the insurance carrier undoubtedly intended that the insurance contract would protect the Halpins

from sanctions against uninsured drivers provided for in *Chap. 303*.

The insurance company argues that the financial responsibility law cannot be characterized as a compulsory insurance law because § *303.160* provides alternate methods for supplying evidence of financial responsibility. This section, unchanged by the 1986 amendments, authorizes proof of financial responsibility by such alternative means as a surety bond, deposit of cash or securities, and a certificate of self-insurance. The legislature has invited confusion by blending the old and the new, but it is apparent that the great majority of motor vehicle owners will undertake to maintain financial responsibility by means of motor vehicle liability policies. The anachronistic features of the statute are apparent in that such methods as the posting of bond or the deposit of cash or securities would be appropriate only after an accident occurs, and an owner using these methods would not be in compliance with § *303.025*. The statute is, for all practical purposes, a compulsory insurance law. *Cf. Transamerica Insurance Company v. Henry*, 563 N.E.2d 1265, 1268 (Ind.1990).

■ Respondent next argues that § *303.190* applies by its terms only to policies "certified" in accordance with the provisions of §§ *303.170* or *303.180*. Both of these sections were unchanged by the 1986 amendments. *Section 303.190.1* provides as follows:

A "motor vehicle liability policy" as said term is used in this chapter shall mean an owner's or an operator's policy of liability insurance, certified as provided in section 303.170 or section 303.180 as proof of financial responsibility, and issued, except as otherwise provided in section 303.180 by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

This argument also highlights an anachronism in the present law. Under the 1953 law, a motor vehicle owner was not obliged to demonstrate financial responsibility until there had been an accident causing damage in excess of $500. The custom-

ary method was by providing a certificate of insurance. Under the present law, the proof of responsibility must antedate the exposure. The statutory scheme no longer permits "one free accident." *Section 303.-025.2* calls for a "motor vehicle liability policy which conforms to the requirements of the laws of this state." *Section 303.-190.2* sets forth those requirements. If the provisions were to apply only to certified policies, then the new law would be substantially less effective.

The insurer next argues that the division of insurance "approved" the insurance contract, containing the household exclusion clause, when the contract was filed without challenge by that agency. The insurer points to § *303.025.3*, which reads as follows:

> Nothing in sections 303.010 to 303.050, 303.060, 303.140, 303.220, 303.290, 303.-330 and 303.370 shall be construed as prohibiting the division of insurance from approving or authorizing those exclusions and limitations which are contained in automobile liability insurance policies and the uninsured motorist provisions of automobile liability insurance policies.

■ *Section 375.920* was enacted in 1979 and apparently has never been judicially construed. It does not give the Director of Insurance a roving commission to determine the permissible provisions of insurance policies but simply authorizes that officer to litigate issues about policy language and provisions by petition to the Administrative Hearing Commission. This does not preclude parties to litigation from advancing public policy arguments regarding provisions of insurance contracts. *Cameron Mutual Insurance Co. v. Madden*, 533 S.W.2d 538 (Mo. banc 1976). Matters of public policy are ultimately for the courts. *Section 375.920* does not legitimize all policy exclusions to which the director does not take explicit exception.

■ The plain purpose of the 1986 amendment is to make sure that people who are injured on the highways may collect damage awards, within limits, against negligent motor vehicle operators. This protection extends to occupants of the insured vehicle as well as to operators and occupants of other vehicles and pedestrians. The purpose would be incompletely fulfilled if the household exclusion clause were fully enforced. The exclusion applies not only to spouses or children but to others who never had the benefit of any doctrine of immunity, such as parents, siblings, and live-in domestics. We believe that the legislature had a purpose of requiring motor vehicle liability policies to provide coverage coextensive with liability, subject to the statutory limits. We should give effect to the pervasive purpose even though the method of expression may be inartistic.

Amici curiae direct our attention to *Transamerica Insurance Company v. Henry*, 563 N.E.2d 1265 (Ind.1990), which treated of a legislative scheme very much like ours. *Transamerica* expressly sanctions household exclusion clauses and does not require a motor vehicle owner's insurance to extend to all persons who have legal claims against the operator. We do not elect to follow that case. As in *Ward*, numerous decisions of other courts are cited by amici curiae, and we have had resort to these cases. These show sharp divergence.[1] We conclude that our own decisions provide the most satisfactory guidance. *See Ward*, 789 S.W.2d at 796, n. 2.

■ The appellants contend that the household insurance clause should be applied not only to the limits required by § *303.190.2*, which are $25,000 for injury to one person, $50,000 for injuries in one accident, and $10,000 property damage, but also to the full limits of the coverage, which in this case exceed the minimum.

---

1. To date, no less than twenty states have ruled on the validity of family exclusion clauses. The majority of these jurisdictions have held that these clauses are entirely void as against public policy or valid only to the extent of limiting the insurer's liability to the minimum coverage required by statute. *See generally* Annotation, *Validity, Under Insurance Statutes, of Coverage Exclusion for Injury to or Death of Insured's Family of Household Members*, 52 A.L.R.4th 18 (1987); *see also Jordan v. Aetna Casualty & Surety Company*, 264 S.C. 294, 214 S.E.2d 818 (1975).

The contention is answered by § *303.190.7*, which reads as follows:

> Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants such excess or additional coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

■ As *Ward* pointed out, our decisions recognize freedom of contract in liability insurance. *Ward,* 789 S.W.2d at 795. *See Rodriguez v. General Accident Insurance Co.,* 808 S.W.2d 379 (Mo.1991); *Hines v. Gov't Employees Ins. Co.,* 656 S.W.2d 262 (Mo. banc 1983); *Cano v. Travelers Ins. Co.,* 656 S.W.2d 266 (Mo. banc 1983). When the contract language is clear, as it is here, exceptions based on public policy must usually find support in necessary implication from statutory provisions. *Cameron Mutual,* 533 S.W.2d 538 (Mo. banc 1976). *Section 303.190.7* manifests to insureds that they have no basis for expecting coverage in excess of the requirements of § *303.190.2.*

We express no opinion on the provisions of § *303.190.8,* reading as follows:

> Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of this chapter.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

RENDLEN, COVINGTON, HOLSTEIN, BENTON and THOMAS, JJ., concur.

THOMAS, J., concurs in separate opinion filed.

RENDLEN and COVINGTON, JJ., concur in opinion of THOMAS, J.

ROBERTSON, C.J., dissents in separate opinion filed.

THOMAS, Judge, concurring.

I concur both in the rationale and the result of the majority opinion. I would express the impact of the public policy of the Financial Responsibility Law upon the insurance policy in a slightly different manner. The public policy inherent in the statute creates an implicit agreement in American Family's policy that, to the extent of the limits required by the Financial Responsibility Act, the provisions concerning coverage will automatically change to conform to any changes in the law of Missouri related to "the liability imposed by law for damages arising out of ... use of such motor vehicle," (the language of § 303.-190). This is not a matter of changing the terms of the policy retroactively; when American Family chose to write a policy in a state with a financial responsibility law such as Missouri's, it undertook to insure pursuant to whatever changes in the common law may occur during the term of the policy.

American Family's household exclusion clause is overbroad on its face because it purports to exclude liability for damages to "any person related to [Mr. and Mrs. Halpin] and residing in [their] household." Despite this apparent broad exclusion, the exclusion is actually no broader than the immunity law of Missouri with regard to liability between such persons. The outer limits of this exclusion clause are far more likely to be defined by the outer limits of the law of Missouri on liability between such persons than they are to be defined by the language of the insurance policy. As the Missouri liability law changed, the scope of this exclusion clause automatically changed with it. American Family is deemed to have impliedly agreed to this flexible approach to coverage as a part of having agreed to insure Mr. and Mrs. Halpin in Missouri where the Financial Responsibility Act is applicable. To the extent of the scope and amount of coverage required by the Act, American Family is deemed to

have agreed to this coverage just as if it had rewritten the policy to conform to our holding in *Hartman v. Hartman,* 821 S.W.2d 852 (Mo. banc 1991).

The dissent points out that American Family had every reason to believe that parental immunity was the law of Missouri when it agreed to insure the Halpins and determined the premium it would charge to provide the coverage that it contracted to provide. Because the coverage contemplated by the express provisions of the policy at the time the premium was set did not include liability to the Halpin children for the negligence of their parents, the dissent would not retroactively impose such liability. While it is true that American Family did not know at the time it wrote the policy that the law would change with respect to parental immunity, it knew that it was writing the insurance policy in Missouri where the Financial Responsibility Act required coverage of "liability imposed by law for damages arising out of ... use of such motor vehicle," and it knew that this law is subject to change from time to time. The cost of increased coverage by reason of an expansive change in the law must fall upon either American Family or its insured. I believe that the public policy of the Act dictates that this cost should fall upon American Family.[1]

ROBERTSON, Chief Justice, dissenting.

I respectfully dissent.

I have no dispute with the Court's broad holding that household exclusion clauses in automobile insurance contracts that prohibit children from recovering from their parents now violate public policy. I fully

agree that with the abolition of the common law doctrine of parental immunity by this Court on December 17, 1991, *Hartman v. Hartman,* 821 S.W.2d 852, (Mo. banc 1991) and *Armstrong v. Armstrong,* 821 S.W.2d 852 (Mo. banc 1991), the Financial Responsibility Act, Sections 303.010–.370, RSMo 1986, mandates coverage for children in automobile insurance contracts.

But this case is about a single contract and an accident both of which substantially predate this Court's decision in *Hartman.* This case seeks a declaration by the Halpin parents as next friends of the Halpin children that (1) the injuries caused the children by the mother's negligence (so the pleading states in an apparent attempt to admit liability) are not subject to the household exclusion clause of the insurance contract because that clause violates public policy; (2) that "each minor Plaintiff may recover for personal injuries up to $50,000 each"; and (3) that the court determine the damages sustained by each Halpin child. The trial court ruled in favor of American Family, holding quite correctly that until parental immunity was dissolved American Family's contract provided no coverage for the claim of the Halpin children.

When American Family and the Halpins entered this contract and at the time of the accident at issue here, Missouri law forbad the Halpin children from seeking a recovery from the Halpin parents. It matters not that the legislature had passed the Financial Responsibility Act. That act requires a driver to maintain proof of financial responsibility. Section 303.160. Proof of financial responsibility means "proof of the ability to respond in damages *for lia-*

---

1. I would observe that in the event of a change in the Missouri liability law that contracts liability, as opposed to the abrogation of parental immunity in *Hartman* that expands liability, American Family will reap the benefit of the lesser exposure to liability. Although the premium will have been set at the beginning of the policy term on the basis of the law at that time, a change in the law that limits liability and thereby benefits defendants will not require a refund of a portion of the premium by American Family. Also, because our decision today is limited to the coverage limits required by the Financial Responsibility Act ($25,000 for injury

to one person, $50,000 for injury in one accident and $10,000 property damage), the cost of any increased risk above these limits will be borne by the insured. I do not cite these results as the basis for the decision of the Court today, which is instead based upon the public policy of the statute, but I make this observation to point out that under our ruling today the "cost" of the change in the law occasioned by our decision in *Hartman* will be spread over both parties and, to some extent, may be mitigated by past or future changes in the law that limit, rather than expand, tort liability in Missouri.

*bility....*" Section 303.020(10). A person is liable if he or she "is bound or obligated according to law." Webster's Third New International Dictionary 1302 (1976). Under this Court's decisions adopting and upholding parental immunity for fifty-two years—decisions that were in full force at the time of this accident and at the time the Halpins and American Family contracted—there could be *no liability* in the Halpin parents. This is because our decisions rendered the parents immune from liability to their children. Thus, the Financial Responsibility Act could not void the household exclusion clause on the grounds of public policy in this case. The public policy of this state required insurance only where there was liability. Until this Court rendered the parents liable by the abrogation of parental immunity, the Financial Responsibility Act simply did not apply.

Under the plain language of the policy neither the Halpins nor American Family intended to insure the Halpin parents against actions by the Halpin children. The plain language of the Financial Responsibility Act did not require such coverage either.

Without so much as a tip of the cap to the immunity/liability question, the majority holds that a clause of the contract between the Halpins and American Family is invalid. Yet that clause accurately reflected the law and the parents' liability to their children when the parties agreed to it.

In *American Family Mutual Insurance Co. v. Ward*, 789 S.W.2d 791 (Mo. banc 1990), Judge Covington, with whom I joined, wrote:

> Whatever the public policy now espoused by the State of Missouri [whether by legislation or judicial decision], this Court should not by judicial fiat retroactively impose that policy on this antecedent insurance contract.

*Id.* at 797 (Covington, J., concurring). The insurance contract under scrutiny here is antecedent to the announcement of the common law public policy that renders the Halpin parents liable for injuries to their children. American Family had every reason to believe that parental immunity was the law of Missouri when it agreed to insure the Halpins and determined the premium it would charge to provide the coverage which it contracted to provide. The Financial Responsibility Act required no coverage because there was no liability under parental immunity.

Because I still hold to the apparently antiquated notion that contracts define the relationships between parties, I would not retroactively impose the policy permitting children to sue parents so recently announced by this Court on this antecedent insurance contract. I, therefore, respectfully dissent.