Richard W. SANDERS & Rowena
F. Sanders, Plaintiffs,

v.

David WALLACE, d/b/a David Wallace
Farms, Defendant.

MASSEY FERGUSON, INC., Defendant–
Garnishor/Appellant,

v.

TRAVELERS INDEMNITY COMPANY,
Garnishee/Respondent.

No. 65099.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 9, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 19, 1994.

Application to Transfer Denied
Oct. 25, 1994.

See also 817 S.W.2d 511.

Thomas R. Larson, David E. Larson, Joseph A. Mahoney, Kansas City, for appellant.

Robert T. Haar, Lisa A. Pake, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Massey Ferguson (MF), appeals from an entry of summary judgment entered in the Circuit Court of Jefferson County in favor of respondent, Travelers Indemnity (Travelers). We affirm.

On July 29, 1985, Richard Sanders was injured while in the employment of David Wallace when Wallace's MF tractor, operated by Sanders, capsized. Sanders sued MF and Wallace and was awarded $2,250,000. The Court assessed 60% of the liability to Massey Ferguson and the remaining 40% to David Wallace. Mr. Sanders was unable to collect the judgment from Columbia Mutual Insurance Company [1] through whom Wallace had farm insurance and therefore, initiated proceedings against respondent, Travelers, through whom Wallace had personal liability insurance.[2] After Sanders initiated his action against Travelers, MF paid Sanders the entire $2,250,000 judgment and thereby acquired the rights to Sanders' judgment against Mr. Wallace and continued the garnishment action against Travelers.

Mr. Wallace had purchased a Personal Liability Umbrella of Security policy (PLUS) from Travelers in November, 1976, and renewed it for successive one year periods until 1988. There was a checklist of options for the insured to complete to establish precisely what the PLUS coverage insured. The checklist included: residence, autos, recreational vehicles, watercraft, etc. Wallace checked off only residence and autos and paid an annual $87.00 premium. The policy excluded coverage for any damage arising out of property on which business was done or arising out of the business pursuits of any insured.

Wallace first purchased his farm in 1971. However, he did not begin farming operations until the late 1970's and did not move to the farm until 1980. Wallace continued farming until January, 1985. The operation proved to be unprofitable posting losses of $24,740 for the year 1985. Wallace decided to cut his losses and get out of the farming

---

1. Columbia Mutual defended Wallace in the initial action brought by Sanders.

2. In a separate final judgment the court ruled that the "farm employee" exclusion in the Columbia Mutual policy absolved Columbia Mutual of any liability for Sanders' injury.

business.[3] Although he sold his livestock to a nearby farmer, he retained 190 acres of crops (90 acres of his own property and 100 acres he rented from others). Of his 90 acres of crops, he had 50 acres of hay. Wallace had an arrangement with the new owner of his livestock allowing the new owner to keep half of the hay in exchange for his cutting and baling all of the hay on an area referred to as the river bottom field. Mr. Wallace had no intention of using his portion of the hay for any commercial purpose.

Approximately six months after the sale of the livestock, Richard Sanders was injured by the tractor while moving Wallace's portion of the hay from the field to the barn.[4]

Mr. Sanders brought suit against David Wallace and Massey Ferguson in the Circuit Court of Jefferson County and was awarded $2,250,000. Mr. Wallace's farm insurance with Columbia Mutual did not cover Sanders' injury. Mr. Sanders then brought suit against Travelers, the company through whom Wallace had a personal liability policy, in an attempt to collect the 40% liability assessed against Wallace. After suit was filed, MF acquired the rights to the judgment against Wallace. The trial court granted respondent, Travelers Indemnity Company, summary judgment, ruling that the policy Travelers had issued to David Wallace did not cover the above described incident. This appeal ensued.[5]

· Appellant raises three points on appeal. First, MF claims the trial court erred in granting summary judgment because (a) the activity Wallace was engaged in falls under the "incidental farming" inclusion of the PLUS policy and (b) "the particular hay moving activity which led to the injury of Sanders was not a business pursuit and is therefore covered by the policy." MF further claims summary judgment was inappropriate because there still remains a genuine issue of material fact "as to whether (a) Wallace reasonably expected coverage or (b) the Travelers agent orally established cover-

age." Finally, MF asserts that summary judgment should have been granted in its favor. We reject all of MF's contentions and affirm the judgment of the trial court.

The standard of review for a grant of summary judgment requires this court to review the record in the light most favorable to the party against whom judgment was entered and allow that party all reasonable inferences which may be drawn from the evidence. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). This Court's review is essentially de novo. *Id.*

We begin our review by attempting to discern whether this situation falls under the "incidental farming" inclusion of the PLUS policy. This involves a question of law and is therefore within this court's jurisdiction. "It is the exclusive province of the Court to construe a written instrument." *Tomnitz v. Employers' Liability Assur. Corporation*, 343 Mo. 321, 121 S.W.2d 745, 752 (1938) (citations omitted).

Appellant is correct in his assertion that all ambiguities are to be resolved in favor of the insured. *Stahl v. American Nat. Assur. Co.*, 70 S.W.2d 78, 80 (Mo.App.St.L.D. 1934). However, it is the court's province to determine whether the policy is ambiguous, and merely because the parties disagree does not create an ambiguity. *Id.* In *Omaha Property & Cas. v. Peterson*, 865 S.W.2d 789, 790 (Mo.App.W.D.1993), the court stated that "[a]n insurance policy is ambiguous if its provisions are duplicitous or difficult to understand." We find the policy did not leave any undue doubt as to whether the "incidental farming" provision covered an operation as extensive as the one Wallace was engaged in. We have no doubt there are scenarios which would render the "incidental farming" clause ambiguous; this, however, is not such a situation. The policy defined "business" as "any full or part-time trade, profession or

---

**3.** In February of 1985 Wallace took a full-time supervisory position with R.J. Green Construction Company.

**4.** Mr. Sanders' damage award was the subject of previous litigation and therefore the injuries sus-

tained by Mr. Sanders are not relevant to this appeal.

**5.** Additional facts will be developed when relevant.

occupation. It does not mean *incidental farming* (emphasis added) by any *insured* on the *residence premises*." (emphasis in original).

In *Safeco Ins. Co. v. Howard*, 782 S.W.2d 658, 659 (Mo.App.E.D.1989), this court, when assessing whether the relevant activity constituted a business pursuit, looked to whether "[t]here was the requisite profit motive and business continuity." Using these two factors it is apparent that what Wallace was engaged in was a business pursuit. His income tax returns, application for subsidies, and sale of crops clearly demonstrate that the farming was profit motivated. As far as continuity, we hold an operation dating back to the late 1970's meets the requirement. As such, we find that Wallace's operation constituted a business pursuit.

■ Both appellant and respondent offer numerous interpretations for the word "incidental". Appellant claims that every possible definition given in the dictionary and thesaurus [6] must be applied, and if any one of them would serve to include coverage in this case, then respondent has not met its burden of proving that coverage is excluded. We disagree. "In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives and intent of the parties." *State ex rel. Toastmaster v. Mummert*, 857 S.W.2d 869, 872 (Mo.App.E.D. 1993). One must also look at the contract as a whole. *Insurance Co., Etc. v. West Plains Air*, 637 S.W.2d 444, 446 (Mo.App.S.D.1982). Furthermore, "[n]o better mode of ascertaining the proper construction of a contract can be found than that afforded by the actions of the parties under it." *Sulzbacher v. Travelers Ins. Co.*, 137 F.2d 386, 391 (8th Cir.1943). Finally, one must consider the language in the context of the policy. *First Nat. Bank v. Farmers New World Life Ins. Co.*, 455 S.W.2d 517, 523 (Mo.App.Spfld.D.1970). Hence, any of the definitions offered which are not compatible with the tone of the contract, the general understanding of the parties regarding the contract and the specific clause under contention, will be disregarded.

We first determine the definition of "incidental farming" within the parameters set forth directly above. The policy purchased by Wallace from Travelers was only to cover the residence and two automobiles (and those things normally associated with the insured items).[7] The policy was purchased before Wallace had even begun his farming operation and therefore, the policy could not have been originally intended to cover his farm. We find no evidence Wallace intended to insure his farm under the PLUS policy. Furthermore, when he started farming, Wallace bought a farm insurance policy from another company, Columbia Mutual. Unfortunately for the parties involved in this suit, Columbia Mutual and Wallace neglected to omit the "farming employees" exclusion from the policy, thereby absolving Columbia Mutual from any liability in this scenario. Contrary to appellant's claim, we can logically conclude from the foregoing that the PLUS policy was not meant to cover a major farming operation.

Black's Law Dictionary provides a definition of "incidental" which is consistent with the guidelines enumerated above: "Depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose." Black's Law Dictionary 686 (5th ed. 1979).

**6.** This Court is not aware of any authorization for the use of a thesaurus when defining words used in an insurance contract.

**7.** Appellant attempts to contest the validity of this point. He argues the coverage of the residence and autos was only agreed upon on the declaration page and as such the page cannot serve to deny coverage. Appellant cites to *Taylor v. Black*, 258 F.Supp. 82, 86 (E.D.Mo.1966), in support of this contention. There, the court stated the application for the insurance policy, if not referred to within the body of the policy, could not serve to exclude coverage. This claim fails for two reasons: 1) on pages 10 and 11 the policy stipulated there was coverage only for the terms indicated on the declaration page—we therefore have a direct reference within the body of the policy to the contested part; and 2) the policy itself excluded business pursuits, thereby precluding the possibility that any premium would have been collected for coverage of the farming operation.

■ This definition does not preclude coverage for every farming operation attempting to generate a profit, but it does preclude one where the *main* purpose of the premises is to engage in farming. We find Wallace's business falls under the latter category. From the legal file it is apparent Wallace purchased the property in order to engage in farming, and that remained his intention the entire period during which he owned it. He had hired employees to help with the farming, he had farm equipment worth a considerable amount of money, and he had suffered significant losses from the farm. Furthermore, Wallace classified himself as a farmer, and he applied for subsidies available only to farmers.[8] The farming endeavor was too extensive to be considered as merely an accompaniment to the principal activity (i.e. the residence).

Appellant's claim that the inclusory "incidental farming" clause does more than just incorporate sporadic instances of farming has merit. In support of this, counsel for appellant during oral argument contended that the policy stipulated incidental *farming* and not gardening. However, we find that although the provision does allow for more than gardening, it does not encompass an operation as extensive as the one at issue.

The cases appellant cites to are easily distinguishable from the case at bar. In *Allstate Insurance Co. v. Jarrett,* 1991 U.S. Dist. LEXIS 15832, 1994 WL 521094 (D.Va. 1991), a child was injured while Jarrett was babysitting for the baby in her home. Although Jarrett babysat on a regular basis for profit, the main purpose of her home was to serve as a residence, not to provide a location for a babysitting service. Such is not the case here; although it may be true that the primary purpose of the *house* on the farm was to provide Wallace with a residence, the purpose of the farm *land* was not antecedent to the house.

In *Golden v. Tennessee Farmers Mutual Ins. Co.,* 1987 W.L. 17990 (Tenn.App.1987), cited by appellant, the court was dealing with

an insurance policy which included structures "incidental to the dwelling." The building in question had many items which were associated with the insured dwelling. It is true that in *Golden* the court held "incidental" was an inclusive, as opposed to an exclusive, term. However, even if we agree with that assertion, the term would not stretch to cover a situation where the "incidental" operation under contention is clearly primary—such as is our case.

■ Massey claims summary judgment should not have been granted against MF because the specific activity Sanders was involved in at the time of the accident was not a business pursuit. In support of this MF cites to Wallace's deposition in which he claims he no longer intended to make the hay available for commercial purposes. Therefore, any activity done in connection with the hay should not have been considered a business activity. In *Freese v. St. Paul Mercury Indemnity Co.,* 252 S.W.2d 653, 656 (Mo.App. St.L.D.1952) (citations omitted), the court defines business, when "referring to the use of premises ... [as] an occupation and use of premises, permanent and continuous in its character as distinguished from a single act or business transaction or an occasional day's use of the premises." The activity must also have been motivated by a desire to generate a profit. *Salerno v. Western Casualty & Surety Company,* 336 F.2d 14, 19 (8th Cir. 1964).

Appellant is asking us to consider the act during which Sanders was injured out of context. MF claims that the hay moving was no longer a business pursuit because it was not for commercial purposes; therefore, it should not be looked at in conjunction with the other farming Wallace was engaged in and with what he originally intended to do with the hay. We disagree. One must look at the events preceding and following the incident—the surrounding circumstances. From the record it is apparent the hay was initially intended to be used either for com-

---

**8.** Although some of these activities were prior to the relevant time period, they still contribute to the determination of whether the property constitutes a residence or a farm during the pertinent term. Furthermore, we recognize that a primary

activity can thereafter be deemed incidental. However, the events preceding the relevant period aid us in determining the present status of the activity.

mercial purposes or to feed his own livestock. Furthermore, Wallace does not maintain that the remaining crops were unavailable for commercial purposes. In fact, he continued farming until 1988. The reason Wallace chose not to sell the hay was because his wife was ill and he did not have the time to deal with the hay. This extenuating circumstance does not serve to remove the extensive farming operation from the business pursuits exclusion. Simply because he was not successful in his endeavor does not mean he was no longer involved in business. Point denied.

Appellant's second point attempts to refute the grant of summary judgment claiming there are two genuine issues of material fact remaining: first, whether Wallace's expectations created coverage; and second, whether the Travelers' agent's oral representations extended the policy to include an injury such as the one Sanders suffered. This court finds no such issue and therefore rejects the claim.

▮▮▮▮ Appellant's claim, that Wallace's expectations may have established coverage, is totally without foundation. The doctrine of reasonable expectations requires that the expectation be *reasonable* and that of the average person. *Lawrence v. New York Life Ins. Co.*, 649 S.W.2d 461, 466 (Mo.App.W.D. 1983). This court cannot conceive how Wallace could have possibly believed the PLUS policy would cover any "mishap" not covered in his other policies. He checked off only residence and autos as the specific areas he wished to have covered. Appellant points to the title of the policy—"Personal Liability" and suggests that from this title one can conclude there was coverage for any injury suffered on his property. To the contrary, the title leads one to conclude exactly the opposite—only *personal* matters were covered. Appellant further seeks to prove the extent of Wallace's expectations by referring to Wallace's attempt to collect from Travelers soon after the injury. At the time, Travelers' agent, Mr. Andrews, informed Wallace the policy did not provide coverage for Sanders' injury. Appellant claims that Wallace,

immediately upon learning this, cancelled his policy. This, appellant argues, is indicative of Wallace's expectation. We reject this for two reasons: first and foremost, appellant's contention is a misrepresentation of the record—Wallace did not cancel his policy with Travelers until almost three years later; second, this still does not prove that Wallace's expectation was reasonable. Finally, we find no evidence that Mr. Andrews, Travelers' agent, made any statements which would induce Wallace's expectations regarding extended coverage. Based on the material presented, this court does not see how Wallace could have reasonably expected coverage for any mishap, especially one stemming from a business endeavor.

Appellant's claim that the oral representations made by the Travelers' agent served to expand the coverage provided by the policy is meritless. At no point did Mr. Andrews, the agent, indicate there would be coverage for all liability Wallace incurred which was not covered by an alternate policy. The only testimony presented on this issue was Wallace's statements regarding his understanding of the policy. Appellant offers no evidence of any statement made by a representative of Travelers which can be construed as extending coverage beyond the provisions of the policy. Point denied.

Based on the foregoing the judgment is affirmed.[9]

REINHARD, P.J., and CRIST, J., concur.

---

9. We find no need to address appellant's remaining point and affirm pursuant to Rule 84.16(b). Additionally, in the interest of judicial economy, we decline to address respondent's argument regarding untimely notice.