**AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN,**
Appellant,

v.

**Diana MAY, et al., Respondents.**

**No. WD 54626.**

Missouri Court of Appeals,
Western District.

June 16, 1998.

Motion for Rehearing and/or Transfer to Supreme Court July 28, 1998.

Application for Transfer Denied Aug. 25, 1998.

Michael E. McCausland, Kansas City, for Appellant.

Louis Angles, Excelsior Springs, Steven J. Borel & Amy Coopman, John E. Franke, Kansas City, Andrew J. Gelbach, Warrensburg, Mark Louis Willens, Kansas City, for Respondents.

Kenneth Nolker, Personal Representative of the Estate of Jason Sullivan, Deceased, Ray County, MO, Richmond, Respondents acting pro se.

Before HANNA, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

American Standard Insurance Company of Wisconsin appeals the circuit court's declaratory judgment for the respondents, Diana May; Robert G. May; Kenneth Nolker, as personal representative of the estate of Jason L. Sullivan, deceased; Elgin Dothage; Benita Clark; Larry Neil Warren; and, Mark Willens, as defendant *ad litem* for Eric N. Warren, deceased, declaring that a motor vehicle liability insurance policy issued by it to Jason L. Sullivan provided separate bodily injury liability coverage of $25,000 per person and $50,000 per occurrence for both Mr.

Sullivan, as a named insured, and Elgin Dothage, as a permissive driver, which resulted in maximum limits under the policy for the accident in question, as to these two "insureds," of $50,000 per person and $100,000 per occurrence.

The appellant claims in its sole point on appeal that the trial court erred in entering its declaratory judgment for the respondents in that the language of the insurance policy issued by it to Mr. Sullivan is clear and unambiguous and provides for maximum limits for bodily injury of $25,000 per person and $50,000 per occurrence regardless of how many "insureds," covered by the policy, contributed to cause the accident, and, that the policy in this respect does not violate the public policy of this state, as expressed in "Missouri's Motor Vehicle Financial Responsibility Law," § 303.010,[1] *et seq.*, (MVFRL), which, *inter alia*, requires minimum bodily injury liability coverage of $25,000 per person and $50,000 per occurrence.

We reverse and remand.

### Facts

On July 1, 1993, Jill May, Eric N. Warren and Jason L. Sullivan were passengers in Mr. Sullivan's 1987 Dodge Omni, which was being driven by Elgin Dothage, with Mr. Sullivan's permission, and was insured by the appellant, American Standard Insurance Company of Wisconsin. While trying to cross a flooded portion of County Road 333 in Ray County, Missouri, the vehicle was swept off the road by the rushing water, resulting in the death of Ms. May and Mr. Warren.

The insurance policy which covered Mr. Sullivan's vehicle was issued by the appellant to him, as the named insured, and provided bodily injury liability coverage of $25,000 per person and $50,000 per occurrence. As to the limits of the policy, it provided, in pertinent part, as follows:

The limits of liability shown in the declarations apply, subject to the following:

1. The bodily injury liability for 'each person' is the maximum for all damages sustained by all persons as the result of bodily injury to one person in any one occurrence.

2. Subject to the bodily injury liability limit for 'each person,' the bodily injury liability limit for 'each occurrence' is the maximum for bodily injury sustained by two or more persons in any one occurrence.

3. The property damage liability limit for 'each occurrence' is the maximum for all damages to all property in any one occurrence.

We will pay no more than these maximums no matter how many vehicles are described in the declarations, or insured persons, claims, claimants, policies or vehicles are involved.

It is undisputed that both Mr. Sullivan and Mr. Dothage were "insureds" under the policy at the time of the accident, Mr. Sullivan as a named insured, and Mr. Dothage as a permissive driver.

On June 28, 1996, Diana May and Robert G. May, respondents, filed a petition for damages in the Circuit Court of Ray County, Missouri, for the wrongful death of their daughter, Jill, against George Lehnen, as defendant *ad litem* for Mr. Sullivan,[2] on a theory of negligent entrustment of his vehicle to Mr. Dothage; Mr. Dothage, on a theory of negligent operation of the vehicle; and Mark Willens, as defendant *ad litem* for Eric N. Warren, deceased, on a theory of negligent encouragement. On December 7, 1995, the appellant and Mr. Dothage entered into a settlement agreement with the Mays, pursuant to § 537.065, which limited their recovery on their wrongful death claim against Mr. Dothage to $25,000.

Sometime after the settlement agreement was entered into, a dispute arose between the appellant and the Mays over the issue of whether the insurance policy provided additional coverage of $25,000 per person and $50,000 per occurrence for a claim of negli-

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

2. Mr. Sullivan died on or about September 1995 from injuries not related to the accident which is the subject of this action.

gence against Mr. Sullivan, as an insured under the policy. Furthermore, at or near this time, respondents Benita Clark and Larry Neil Warren filed a petition for damages for the wrongful death of their son, Eric, against Mr. Dothage and Mr. Sullivan, wherein they also raised the issue of whether the insurance policy provided separate bodily injury liability coverage of $25,000 per person and $50,000 per occurrence for claims of negligence against both Mr. Sullivan and Mr. Dothage.

On June 14, 1996, the appellant filed a petition in the Circuit Court of Ray County for a declaratory judgment seeking a declaration that the policy issued to Mr. Sullivan provided liability coverage limited to a maximum of $25,000 per person and $50,000 per occurrence for all claims made against either Mr. Dothage for his alleged negligent operation of the motor vehicle; Mr. Sullivan for his alleged negligent entrustment of the insured vehicle to Mr. Dothage; and Eric N. Warren for his alleged negligent encouragement of the accident. On July 17, 1996, the appellant filed its first-amended petition for declaratory judgment, and on December 5, 1996, filed its second-amended petition. On May 1, 1997, the appellant filed a motion for summary judgment on its second-amended petition. On June 10, 1997, a hearing was held on the motion, which was denied. However, the parties stipulated that the trial court could enter a judgment on the appellant's petition without further hearing based upon the summary judgment arguments, the admissions, the pleadings and the related documents of record.

Based on the stipulations of the parties, the trial court entered a declaratory judgment for the respondents wherein it declared that the MVFRL required the policy issued to Mr. Sullivan to provide separate minimum liability coverage for the alleged negligence of both Mr. Sullivan and Mr. Dothage of $25,000 for the death or bodily injury to any one person in any one accident and $50,000 for the death or bodily injury to two or more persons in any one accident, resulting in maximum limits of coverage for the accident in question of $50,000 per person and $100,000 per occurrence. The court further de-clared that any policy language to the contrary was null and void as being in violation of the MVFRL and the public policy of the State of Missouri. Finally, the court declared that the MVFRL did not require a separate and additional limit of liability with regard to the alleged negligence of Mr. Warren.

This appeal follows.

## Standard of Review

■ In a declaratory judgment action, the judgment entered by the trial court will be affirmed unless: (1) there is no substantial evidence to support it; (2) it is against the weight of the evidence; or, (3) it erroneously declares or applies the law. *Associated Industries of Mo. v. Angoff*, 937 S.W.2d 277, 282 (Mo.App.1996).

## I.

In its sole point, the appellant claims that the circuit court erred in entering its declaratory judgment for the respondents in that the language of the insurance policy issued by the appellant to Mr. Sullivan was clear and unambiguous and provided for maximum limits for bodily injury of $25,000 per person and $50,000 per occurrence regardless of how many "insureds," covered by the policy, contributed to cause the accident, and, that the policy in this respect does not violate the MVFRL, which, *inter alia*, requires minimum bodily injury liability coverage of $25,-000 per person and $50,000 per occurrence. The respondents contend that the trial court was correct in declaring that under the insurance policy in question there was maximum liability as to Mr. Sullivan and Mr. Dothage of $50,000 per person and $100,000 per occurrence for two reasons: (1) the language of the policy was ambiguous as to the maximum liability limits, requiring it to be construed against the appellant insurance company; and, (2) the MVFRL required maximum liability limits under the policy for Mr. Sullivan's and Mr. Dothage's alleged negligence of $50,000 per person and $100,000 per occurrence. Because the trial court's judgment entry reflects that its declaratory judgment for the respondents was based upon the re-

spondents' second contention, we will examine it first.

**■ A. Did the MVFRL require separate minimum bodily injury liability coverage of $25,000 per person and $50,000 per occurrence for both Mr. Sullivan and Mr. Dothage resulting in maximum limits of $50,000 per person and $100,000 per occurrence?**

■ The Missouri Supreme Court has recognized that there is freedom to contract in liability insurance. *First Nat'l Ins. Co. of America v. Clark*, 899 S.W.2d 520, 521 (Mo. banc 1995); *Halpin v. American Family Mut. Ins. Co.*, 823 S.W.2d 479, 480–81 (Mo. banc 1992). "Nevertheless, the Court will not recognize contractual provisions that are contrary to the public policy of Missouri as expressed by the legislature." *First Nat'l Ins. Co. of America*, 899 S.W.2d at 521. "[P]ublic policy requires that a contract of liability insurance provide the coverage indicated in Sec. 303.190 so that the insured will be in compliance with Sec. 303.025." *Halpin*, 823 S.W.2d at 481. Thus, a contract for insurance which violates the public policy of Missouri, as expressed in the MVFRL, will not be enforced by the courts of this state and will be construed to provide the minimum coverage required by the MVFRL. In this regard, the respondents claim that the public policy of Missouri requires us to ignore the language of the policy in question to the end it provides for maximum liability limits of only $25,000 per person and $50,000 per occurrence, and to construe it to provide separate liability coverage as to the negligence of both Mr. Sullivan and Mr. Dothage, resulting in maximum limits for the accident in question of $50,000 per person and $100,000 per occurrence. We disagree.

The MVFRL, found in § 303.010, *et seq.*, was enacted in 1986. *Halpin*, 823 S.W.2d at 480. It requires the owner of a motor vehicle to maintain "financial responsibility" without regard to driving history. *Id.*

> Section 303.025 establishes a mandate for maintenance of financial responsibility by owners of motor vehicles and, absent owner's coverage, requires operators to maintain financial responsibility when operating a vehicle owned by another. However, Section 303.025 does not define the nature or extent of financial responsibility required. To determine what will satisfy the mandate, one must look to Section 303.160, *et seq.*, RSMo 1994. Most owners and operators of vehicles undertake to satisfy the requirement by purchasing a motor vehicle liability policy.

*First Nat'l Ins. Co. of America*, 899 S.W.2d at 522.

The term "motor vehicle liability policy" is defined in § 303.190.1 as an "owner's or operator's policy of liability insurance." *Id.* at 523. An owner's and operator's policy are defined as follows:

2. Such owner's policy of liability insurance:

\* \* \*

(2) Shall insure the person named therein *and* any other person, as insured, using any motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits, exclusive of interests and costs, *with respect to each motor vehicle*, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident. . . .

3. Such operator's policy of liability insurance shall insure the person named as insured therein against loss from liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him . . . subject to the same limits of liability as are set forth above with respect to any owner's policy of liability insurance.

Section 303.190.2–3 (emphasis added). The parties agree that for the purposes of our discussion that the policy in question here is an owner's policy under § 303.190.2.

In contending that the MVFRL requires separate minimum liability coverage of $25,000 per person and $50,000 per occurrence for the alleged negligence of both Mr. Sullivan, as the named insured, and Mr. Dothage, as the permissive driver, resulting in maximum limits of $50,000 per person and $100,000 per occurrence, the respondents point to the term "**and**," as used in the phrase, "[s]hall insure the person named therein *and* any other person, as insured, using any motor vehicle ...." § 303.190.2(2) (emphasis added). The appellant contends that the use of the term "and," in the context quoted, only requires minimum liability coverage of $25,000 per person and $50,000 per occurrence, regardless of the number of "insureds" involved in an occurrence, and does not require separate minimum liability coverage of $25,000 per person and $50,000 per occurrence as to both, which could be stacked to provide for increased policy limits. The appellant relies on the phrase, "with respect to each such motor vehicle," in § 303.190.2, in support of its argument that the MVFRL should be interpreted as only requiring minimum liability coverage as to each insured motor vehicle, rather than as to each insured. Given these arguments of the parties, we are logically required to construe § 303.190.2 to determine whether it requires separate minimum liability coverage and limits of $25,000 per person and $50,000 per occurrence as to each insured or as to each insured vehicle. We find this determination to be a case of first impression in Missouri.

"When construing statutes, courts must endeavor to ascertain the intent of the legislature from the language used and, if possible, give effect to that intent." *State v. Ruch*, 926 S.W.2d 937, 938 (Mo.App.1996). In determining the intent of the legislature, one must consider the plain and ordinary meaning of the terms used in the statute. *Id.* Here, giving the language of § 303.190.2(2) its plain and ordinary meaning, we find that the policy limits are directed to the insured vehicles of Mr. Sullivan, not the insureds, and requires that **each insured vehicle** be insured for the minimum MVFRL limits, $25,000 per person and $50,000 per occurrence.

Our interpretation of § 303.190 is supported by the decision in *First Nat'l Ins. Co. of America*, wherein the Missouri Supreme Court stated that "the liability insurance described under the safety responsibility law relates to the use and operation of a particularly described motor vehicle...." *First Nat'l Ins. Co. of America*, 899 S.W.2d at 522. Further support can be found in *Whitehead v. Weir*, 862 S.W.2d 507 (Mo.App.1993), where the court held that the MVFRL does not require liability insurance for the specific negligent acts of an insured, as the respondents contend here, rather, it simply requires that an insured vehicle be insured to the statutory minimums required by the MVFRL. *Id.* at 508–09. Our interpretation is also consistent with the public policy of this state, "to make sure that people who are injured on the highways may collect damage awards, *within limits*, against negligent motor vehicle operators." *Halpin*, 823 S.W.2d at 482 (emphasis added).

The respondents argue that *Halpin* should be interpreted as holding that the MVFRL requires separate minimum liability coverage of $25,000 per person and $50,000 per occurrence for each insured. The respondents' reliance on *Halpin* in this respect is misplaced. *Halpin* dealt with the issue of what exclusions from coverage are allowed without violating the MVFRL; whereas, the case at bar deals with the issue of whether the MVFRL minimum coverage for each insured could be stacked to provide increased limits.

For the reasons stated, we find the trial court erroneously declared and applied the law by declaring that the insurance policy issued to Mr. Sullivan by the appellant did not comply with the MVFRL and that the maximum limits under the policy for the accident in question were required by public policy to be $50,000 per person and $100,000 per occurrence. However, this does not end our inquiry because the respondents urge us to affirm the trial court's judgment on the alternative basis that the language in the policy setting forth the liability limits was ambiguous; and, thus, case law requires us to construe the policy against the appellant to provide for limits of $50,000 per person and $100,000 per occurrence.

**B. Is the language of the insurance policy ambiguous as to the maximum policy limits, requiring us to construe it against the appellant to provide for maximum limits of $50,000 per person and $100,000 per occurrence?**

■ As to the respondents' contention that the language of the policy is ambiguous as to the maximum liability limits, requiring it to be construed against the insurance company, the appellant first argues that because this issue was not raised by the respondents at trial, it may not be raised by them for the first time on appeal. While it is true that an appellant is bound by the theory he or she relied upon at trial and may not raise a new theory on appeal, *Mid–West Management Trust v. Stillman Land Co.*, 888 S.W.2d 368, 369 (Mo.App.1994); *Schneider v. Forsythe Group, Inc.*, 782 S.W.2d 139, 146 (Mo.App. 1989), including a defendant-appellant who failed to raise a defense at trial, *Feingold v. Buckeye Dev. Co.*, 573 S.W.2d 413, 414 (Mo. App.1978), this is not equally true of a respondent.[3] This is so in that, in a court-tried case, we are required to affirm the judgment of the trial court if it is correct on any reasonable theory which is consistent with the pleadings and is supported by the evidence, regardless of the theory of recovery or defense relied upon by the respondent at trial. *Cottonhill Inv. Co. v. Boatmen's Nat'l Bank of Cape Girardeau*, 887 S.W.2d 742, 743 (Mo.App.1994); *Kirkland v. Todd*, 856 S.W.2d 936, 937 (Mo.App.1993). As such, the issue of the ambiguity of the contract language raised by the respondents on appeal was not waived. Moreover, from the record it appears that this issue *was*, in fact, raised by the respondents in their pleadings at trial.

As discussed, *supra*, the record reflects that the trial court based its declaratory judgment on its interpretation of the requirements of the MVFRL, rather than the issue of whether the contract language dealing with the liability limits of the policy was ambiguous. However, given that we must affirm the declaratory judgment of the trial court if it is correct on any reasonable theory which is consistent with the pleadings and is supported by the evidence, *Cottonhill*, 887 S.W.2d at 743, we must examine the issue of whether the contract language of the insurance policy concerning liability limits was ambiguous.

■ It is undisputed that the policy issued by the appellant to Mr. Sullivan provided bodily injury liability coverage of $25,000 per person and $50,000 per occurrence for an insured. It is also undisputed that at the time of the accident, both Mr. Sullivan and Mr. Dothage were insureds under the policy. The dispute between the parties revolves around whether the policy provided maximum liability limits of $25,000 per person and $50,000 per occurrence, regardless of the number of insureds involved in the accident, as the appellant argues, or whether it provided separate coverage and limits for each negligent act of the insureds, as the respondents argue. The dispute as to the ambiguity of the insurance contract as to policy limits centers on the following language of the policy:

> The limits of liability shown in the declarations apply, subject to the following:
>
> 1. The bodily injury liability for 'each person' is the maximum for all damages sustained by all persons as the result of bodily injury to one person *in any one occurrence.*
>
> 2. Subject to the bodily injury liability limit for 'each person,' the bodily injury liability limit for 'each occurrence' is the maximum for bodily injury sustained by two or more persons *in any one occurrence.*
>
> 3. The property damage liability limit for 'each occurrence' is the maximum for all damages to all property *in any one occurrence.*
>
> We will pay no more than these maximums no matter how many vehicles are described

---

3. In our research, we found only one Missouri case which held that a respondent was bound by the theory relied upon at trial and could not raise a new theory on appeal. *Estate of Munzert*, 887 S.W.2d 764, 769 (Mo.App.1994). In so holding, the *Munzert* court relied upon *Bunting v. McDon-* *nell Aircraft Corp.*, 522 S.W.2d 161 (Mo.banc 1975) and *Spychalski v. MFA Life Ins. Co.*, 620 S.W.2d 388, 395 (Mo.App.1981). However, in reading these cases, we find that, as to a respondent, neither provides any authority for the proposition for which it is cited.

in the declarations, or insured persons, claims, claimants, policies or vehicles are involved.

(Emphasis added.) With regard to this language, the respondents claim that the term "occurrence" is not defined in the policy and may be reasonably construed to mean either: (1) each separate negligent act; or, (2) each accident. In this respect, they claim that the insurance policy is ambiguous. And, because interpreting the term "occurrence" to mean "each separate negligent act" would provide separate bodily injury liability coverage and limits of $25,000 per person, and $50,000 per occurrence for both Mr. Sullivan and Mr. Dothage, the policy would be required to be construed to provide for such coverage. *See Lanigan v. Snowden*, 938 S.W.2d 330 (Mo. App.1997). Thus, we must determine if "occurrence," as used in the limits of liability section of the insurance policy issued by the appellant to Mr. Sullivan, is ambiguous.

The key to the interpretation of an insurance policy is whether the policy language is ambiguous or unambiguous. *Haggard Hauling & Rigging Co., Inc. v. Stonewall Ins. Co.*, 852 S.W.2d 396, 399 (Mo.App.1993). Ambiguous provisions of an insurance policy will be construed against the insurer, but unambiguous provisions will be enforced as written. *Id.* "The language of an insurance policy is ambiguous when it is reasonably and fairly open to different constructions." *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo.App.1993). "Ambiguity arises when there is duplicity, indistinctness, or uncertainty of meaning." *Id.* In making this determination, we must give the language used in the policies its plain and ordinary meaning. *Sanders v. Wallace*, 884 S.W.2d 300, 303 (Mo.App.1994); *Madison Block Pharmacy, Inc. v. United States Fidelity & Guaranty Co.*, 620 S.W.2d 343, 346 (Mo.banc 1981). However, "an ambiguous phrase is not considered in isolation, but by reading the policy as a whole with reference to the associated words." *Chase Resorts, Inc.*, 869 S.W.2d at 150. As such, one must consider the language at issue in the context of the entire policy. *Sanders*, 884 S.W.2d at 303.

The following language is included in the limits of liability section:

We will pay *no more* than these maximums *no matter how many* vehicles are described in the declarations, or *insured persons*, claims, claimants, policies or vehicles are involved.

(Emphasis added.) Reading the term "occurrence," as it is used in the policy, together with the quoted language, *supra*, there can be no doubt that the term means each separate accident, not each alleged negligent act of an insured contributing to the accident. To read it otherwise would be to render the quoted language of the policy, *supra*, illusory, at best. Construction of an insurance policy which renders a portion of it illusory should not be indulged. *Cano v. Travelers Ins. Co.*, 656 S.W.2d 266 (Mo.banc 1983). As such, we find the insurance policy issued by the appellant to Mr. Sullivan to be clear and unambiguous as to the maximum policy limits for bodily injury, and that it provides maximum bodily injury limits of $25,000 per person and $50,000 per occurrence, regardless of the number of insureds involved.

Point denied.

## Conclusion

We reverse the declaratory judgment of the circuit court for the respondents and remand the cause to it to enter judgment for the appellant on its petition for declaratory judgment, consistent with this opinion.

All concur.