**NORTHLAND INSURANCE COMPANY, Plaintiff/Respondent,**

v.

**Dannie SCHUBERT and Linda Schubert, Defendants/Appellants,**

**and**

**Albert Straw d/b/a Albert Straw Trucking, Rail Water Transport, Inc., Nationwide Licensing Services, Inc., and Guaranty National Insurance Company, Defendants/Respondents.**

**No. 19855.**

Missouri Court of Appeals, Southern District, Division Two.

June 4, 1996.

William J. Fleischaker, Roberts, Fleischaker, Williams, Wilson & Powell, Joplin, for Defendants/Appellants.

Lynn C. Rodgers, Hall, Ansley, Rodgers & Condry, P.C., Springfield, for Plaintiff/Respondent.

Michael Hufft, Merrick, Baker, Hufft & Strauss, P.C., Kansas City, for Defendant/Respondent Guaranty National Insurance Company.

CROW, Judge.

The history of this appeal is:

November 16, 1995. This court issues opinion affirming trial court's judgment.

December 8, 1995. This court denies motion for rehearing and denies motion to transfer to Supreme Court of Missouri.

January 23, 1996. Supreme Court of Missouri grants application to transfer.

May 28, 1996. Supreme Court of Missouri enters following order: "Cause ordered retransferred to the Missouri Court of Appeals, Southern District."

This court now readopts its original opinion of November 16, 1995, set forth below.

## ORIGINAL OPINION

The trial court entered judgment declaring that neither an insurance policy issued by Northland Insurance Company ("Northland") nor an insurance policy issued by Guaranty National Insurance Company ("GNIC") provided coverage for the parties alleged to be vicariously liable for personal injuries sustained by Dannie Schubert ("Dannie")[1] when a truck in which he was riding overturned because of the alleged negligence of the driver. Dannie and his wife, Linda, appeal from that judgment. We preface our discussion of the assignments of error with an account of the facts.

Marshaling the facts is a tedious task because the case was submitted to, and decided by, the trial court on a motion by Northland for summary judgment. Consequently, the facts lurk in a blizzard of paper showered on the trial court and scattered throughout the 439-page legal file.[2] Furthermore, the judgment does not identify the facts on which the trial court based its adjudication.[3]

---

1. For brevity and clarity, intending no disrespect, we refer to Mr. Schubert by his forename. For the same purpose, we refer to others in this opinion by forename, surname, or abbreviated name.

2. The current version of Rule 74.04(c)(1), which took effect January 1, 1994, requires that a motion for summary judgment "state with particularity in separately numbered paragraphs each material fact as to which the movant claims there is no genuine issue, with specific references to the pleadings, discovery or affidavits that demonstrate the lack of a genuine issue as to such facts." The speed and accuracy of a judicial determination on whether there is a genuine issue of material fact are significantly enhanced when a motion for summary judgment fulfills those requirements. However, Northland's motion for summary judgment was filed October 31, 1991, twenty-six months before the current requirements took effect. Although the trial court ruled on the motion October 17, 1994, nine months after such requirements took effect, the trial court did not compel Northland to comply with them.

3. On March 31, 1992, thirty months before the trial court entered judgment, a different judge refused to enter summary judgment, and in doing so filed findings of fact and conclusions of law on several issues. The judgment appealed

In tracking down and narrating the facts, we are mindful that inasmuch as this is an appeal from a summary judgment, we must review the record in the light most favorable to the Schuberts, the parties against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376[1] (Mo. banc 1993). In doing so, we are aided by the statement of facts in the Schuberts' brief, which is adopted in toto by Northland in its brief and adopted by GNIC in its brief with minor additions.[4] Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record. *First Assembly Church of West Plains v. Ticor Title Insurance Co.*, 872 S.W.2d 577, 581[2] n. 8 (Mo.App.S.D.1994); *Thornbury v. Morris Oil Company, Inc.*, 846 S.W.2d 238, 239[1] n. 2 (Mo.App.S.D.1993).

On June 10, 1986, the Schuberts filed a suit in the Circuit Court of Jasper County against three defendants. The suit was assigned number CV186–618CC; henceforth, we refer to it as "case 618."

The Schuberts' petition in case 618 identified the defendants as: (1) "Albert Straw, … an individual, doing business as Albert Straw Trucking [in] … Jasper County, Missouri," (2) "Rail Water Transport, Inc., … a corporation located at … San Dimas, California," and (3) "Nationwide Licensing Services[,] … a corporation located at … San Dimas, California." We henceforth refer to those defendants as "Straw," "Rail Water," and "Nationwide," respectively.

The Schuberts' petition in case 618 alleged, *inter alia:* (A) on March 24, 1984, Straw owned a truck "leased to Rail Water … and licensed through Nationwide," (B) on that date Straw, Rail Water and Nationwide were "engaged in a joint venture to transport a load of processed chicken from Nashville, Arkansas to Marionville, Missouri," (C) in furtherance of the venture, Straw employed Dannie and one Robin Vancauwenbergh ("Robin") to drive the truck, (D) while Robin

was driving and Dannie was asleep in the "sleeper berth," the truck overturned near Mountainburg, Arkansas, because of Robin's negligence, and (E) Dannie sustained severe injuries. Dannie prayed for $500,000 for his injuries, and Linda prayed for $100,000 for loss of consortium.

On January 3, 1989, thirty months after the Schuberts filed case 618, Northland commenced the instant suit by filing a petition for declaratory judgment against Dannie, Linda, Straw, Rail Water, Nationwide, and GNIC. Northland's petition alleged, *inter alia:* (A) on the date Dannie was allegedly injured, Straw was the named insured in insurance policy number T009615, issued by Northland, (B) policy T009615 contained an exclusion whereby the insurance did not apply to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured, (C) at the time of the accident, Dannie was an employee of Straw, and (D) any injuries Dannie sustained arose out of and in the course of such employment.

Northland's petition further alleged that at the time of the accident, Rail Water was insured by GNIC under policy number TP414546.

Northland's petition prayed, *inter alia,* that the trial court declare that by reason of the employee exclusion mentioned above, policy T009615 provided no coverage for any claims arising from any bodily injury sustained by Dannie, that Northland is not obligated to defend any claims arising out of any bodily injury sustained by Dannie, particularly any claims in case 618, and that Northland is not obligated to pay any judgment which may be entered in case 618.

The Schuberts filed an answer to Northland's petition. Their answer admitted that at the time of the accident, Dannie was "an employee of either … Straw … or Railwater [sic] … or Nationwide," and that Dannie's injuries "did arise out of the course of

---

from provides that those findings of fact and conclusions of law are "hereby set aside and held for naught."

4. Northland and GNIC are the only respondents who filed briefs.

one of the aforementioned employments."[5] The answer cited § 390.126[6] and pled that policy T009615 was issued by Northland "in order to provide that ... Straw would be in compliance with § 390.126." Consequently, averred the Schuberts' answer, "[T]o the extent that any provisions of ... policy [T009615] ... attempt to exclude coverage for the liability of ... Straw ... to ... Dannie ... for the reason that [he] was an employee of ... Straw, said [exclusion] is in conflict with § 390.126 ... and is not enforceable."

The Schuberts' answer prayed, *inter alia,* that the trial court declare policy T009615 covered any liability which Straw would have to the Schuberts for Dannie's injuries arising out of the accident, and that Northland is obligated to pay, within the policy limits, any judgment rendered against Straw in case 618.

In addition to answering Northland's petition, the Schuberts filed a cross-claim against GNIC praying the trial court to declare that policy TP414546 issued by GNIC provided coverage for claims arising from bodily injury sustained by Dannie, and that either GNIC or Northland or both were obligated to pay the amount of any judgment in case 618.

GNIC answered the Schuberts' cross-claim by alleging that policy TP414546 "was amended on February 15, 1984 to delete Rail Water Transport, Inc. as a named insured and therefore was not in effect for Rail Water Transport, Inc. on March 24, 1984."[7] Alternatively, GNIC's answer pled that policy TP414546 contained an employee exclusion identical to Northland's policy T009615, hence policy TP414546 provided no coverage because Dannie "was an employee of Straw and any injuries he received arose out of the course and scope of his employment."

GNIC's answer to the Schuberts' cross-claim prayed the trial court to declare, *inter alia,* that policy TP414546 provided no coverage for any claims arising out of any bodily injury sustained by Dannie, and that GNIC had no duty to defend any defendant in case 618.

On October 31, 1991, fourteen months after an earlier motion for summary judgment was denied, Northland filed the motion for summary judgment[8] which ultimately produced the judgment referred to in the first sentence of this opinion. The thrust of the motion was that the record demonstrated Dannie was Straw's employee at the time of the accident, that any injuries Dannie sustained arose out of and in the course of his employment, that because of the employee exclusion in policy T009615,[9] the policy did not apply to any injury allegedly sustained

5. Some twenty-seven months later, after taking Straw's deposition, the Schuberts changed their position on this issue by filing an amended answer alleging that at the time Dannie was injured, he was a passenger in the truck and Robin was driving it as an "agent" of Straw, Rail Water and Nationwide in furtherance of their interests in the joint venture. However, in this appeal the Schuberts have reverted to their original position. Their brief states: "For purposes of this appeal, the Schuberts accept that Dannie was an employee of Albert Straw."

6. The version of § 390.126 in force on the date of the accident was the version in RSMo 1978. It read, in pertinent part:
   "1. No motor carrier shall operate any motor vehicle on any public highway in this state until after such carrier shall have filed with, and same has been approved by the [public service] commission, a certificate of any insurance carrier duly authorized to do business in this state certifying that there is in effect a liability insurance policy ... in such forms and upon such conditions as the commission may deem necessary adequately to protect the interests of the public in the use of the public highways and with due regard to the number of persons and amount of property transported, which liability insurance shall bind the obligors thereunder to make compensation for injuries to persons ... resulting from the negligent operation of such motor carrier...."

7. It subsequently appeared that GNIC based this contention on an endorsement to policy TP414546, effective February 15, 1984, changing the named insured to: "RAIL–WATER TRANSPORT, LTD."

8. Footnote 2, *supra.*

9. Part IV, paragraph C of policy T009615 read, in pertinent part:
   "This insurance does not apply to:
   ....
   5. **Bodily injury** to any employee of the **insured** arising out of and in the course of his ... employment by the **insured**...."

by Dannie in the accident, and that § 390.126, relied on by the Schuberts, did not invalidate the employee exclusion.

Northland's motion for summary judgment was followed by a motion by GNIC for summary judgment in its favor on the Schuberts' cross-claim against GNIC. GNIC reiterated the contention that Rail Water was not a named insured in policy TP414546 on the date of the accident, and alternatively that because of the employee exclusion, policy TP414546 did not apply to any bodily injury Dannie allegedly sustained. Additionally, GNIC's motion averred policy TP414546 applied only to vehicles leased by Rail Water, and there was no evidence that Rail Water leased the truck involved in the accident.

In opposition to the motions of Northland and GNIC for summary judgment, the Schuberts presented the trial court a 63–page deposition of Straw. The deposition revealed Straw resided "east of Carthage." He owned the truck involved in the accident and another truck. He drove the latter and paid Dannie a weekly salary of $400 to drive the former. They used "brokers" to locate shippers who had cargo to haul.

Straw explained he obtained his motor carrier licenses and permits through Nationwide, a "licensing agency." He avowed, "I believe I had 48–state authority."

The truck involved in the accident was "licensed" in Oregon and carried an Oregon plate. A sign on the truck displayed the name "Rail Water Transportation." Straw got the sign from Nationwide, not Rail Water. Straw believed the truck was "leased" to Rail Water, but he never had any contact with Rail Water, nor did he receive any money from Rail Water. Asked who paid him, Straw replied, "The brokers that I went through."

Straw recounted he wanted insurance coverage that would "legally qualify" him to drive in all 48 states. He purchased policy T009615 from "Proctor and Jarvis," an insurance agency in Springfield, Missouri.

Asked about Robin, Straw replied that Dannie wanted to take Robin on the March 24, 1984, trip because Robin "wanted to get the feel of a truck." Straw gave permission, but insisted he was not going to hire Robin. Straw recalled he warned Dannie that "if he found out that the guy couldn't drive and he got tired, just to pull it over to the side and go to sleep."

On March 31, 1992, the trial court denied the motions of Northland and GNIC for summary judgment.[10] One of the stated reasons was that the employee exclusion in Northland policy T009615 and GNIC policy TP414546 contravened the public policy of Missouri as declared in § 390.126 which, according to the court, was "to protect members of the public, including passengers in a vehicle, injured as a result of the negligence of an insurer [sic]."

Subsequent efforts by Northland and GNIC to induce the trial court to reconsider its ruling were unsuccessful until the Eastern District of this Court decided *Northland Insurance Co. v. Bess,* 869 S.W.2d 157 (Mo. App.E.D.1993), which upheld the validity of an employee exclusion in a commercial automobile insurance policy. On March 8, 1994, citing that case, Northland again moved the trial court to reconsider its ruling on Northland's motion for summary judgment.

On March 29, 1994, the Schuberts dismissed their cross-claim against GNIC for declaratory judgment, without prejudice.

The trial court ultimately entered the judgment referred to in the first sentence of this opinion. As to Northland policy T009615,[11] the trial court, relying on *Northland Insurance,* 869 S.W.2d 157, held that because of the employee exclusion there was no coverage for any claims arising from any bodily injury sustained by Dannie in the accident of March 24, 1984 (including Linda's claim for loss of consortium), that Northland had no duty to defend Straw or Robin[12] in case 618, and that Northland was not obligat-

10. Footnote 3, *supra.*

11. The judgment misstates the policy number of the Northland policy. No issue is raised about that in this appeal.

12. The Schuberts' brief states Robin was killed in the accident.

ed to pay any judgment which may be entered in that case. The trial court reached the same result, for the same reason, regarding GNIC policy TP414546. Additionally, the trial court held the GNIC policy provided no coverage for Rail Water or Nationwide because neither of them was named an insured on that policy at the time of the accident.

■ The first of the Schuberts' two points relied on attacks the trial court's ruling regarding Northland policy T009615. The point states:

"The trial court erred in sustaining [Northland's] motion for summary judgment wherein the court held that the employee exclusion provisions of Northland's policy relieved it of any duty to defend the Schuberts' claim or pay any judgment against Albert Straw because the trial court should have found the employee exclusion provisions of Northland's policy void as against the public policy of the State of Missouri in that Albert Straw was a motor carrier and Section 390.126 R.S.Mo. required that the vehicle which Danny [sic] Schubert was operating [sic] at the time of the accident be insured to make compensation for injuries to persons resulting from the negligent operation of the vehicle and there was no other insurance to make compensation to the Schuberts for Danny [sic] Schubert's injuries."

We begin our consideration of the point with four observations.

First, as noted earlier,[13] the Schuberts concede Dannie was an employee of Straw at the time Dannie was allegedly injured. Although the Schuberts do not explicitly admit Dannie's alleged injuries arose out of and in the course of his employment, they identify no genuine issue of fact material to that question. The only rational conclusion from the record is that any injuries sustained by Dannie arose out of and in the course of his employment. The Schuberts do not argue otherwise.

Second, in light of the preceding paragraph, and because of the employee exclusion in Northland policy T009615,[14] the policy—as written—provides no insurance coverage for any injuries Dannie sustained in the accident of March 24, 1984. The Schuberts do not maintain the employee exclusion clause is ambiguous or that its language fails to exclude coverage for Dannie's alleged injuries. The Schuberts' only basis for claiming the policy provides coverage is that the employee exclusion is nullified by § 390.126.[15]

Third, as pointed out by Northland, a strong argument can be made that § 390.126 does not apply in this case because the statute begins: "1. No motor carrier shall operate any motor vehicle on any public highway in this state. . . ." At the time Dannie was allegedly injured, the vehicle in which he was riding was being operated in Arkansas, not on a public highway in Missouri. Whether the General Assembly of Missouri intended that § 390.126 apply in such circumstances and, if so, whether § 390.126 can override the public policy of Arkansas regarding employee exclusions (whatever it is) in such circumstances, are monumental questions.

Fourth, the Schuberts do not assert the employee exclusion in Northland policy T009615 is nullified by Arkansas law. They rely solely on § 390.126.

Although we are uncertain that a Missouri court can apply § 390.126 to Northland policy T009615 in the circumstances presented here, we need not grapple with that problem in order to adjudicate this appeal. We shall assume, *without deciding,* that § 390.126 applies.

The Schuberts begin their argument under point one by declaring that *Northland Insurance,* 869 S.W.2d 157, relied on by the trial court, does not apply in the instant case because the decision in that case "was based on a construction of the motor vehicle financial responsibility law . . . and did not consider [§] 390.126." The Schuberts state: "Section 390.126 is a motor vehicle financial responsibility law applicable to motor carriers operating and insured in . . . Missouri

---

**13.** Footnote 5, *supra.*

**14.** Footnote 9, *supra.*

**15.** Footnote 6, *supra.*

and requires that a motor carrier have insurance . . . to make compensation for injuries to persons . . . resulting from the negligent operation of the motor carrier." Therefore, according to the Schuberts, inasmuch as § 390.126 "makes coverage mandatory for motor carriers, it should be construed similarly as Chapter 303 was construed" in *Halpin v. American Family Mutual Insurance Co.*, 823 S.W.2d 479 (Mo. banc 1992), so that "exclusions which defeat the purpose of the financial responsibility law are void."

In *Halpin*, the Supreme Court of Missouri held that § 303.025, RSMo 1986, a part of The Motor Vehicle Financial Responsibility Law ("TMVFRL") enacted in 1986, partially nullified the "household exclusion clause" in a policy of motor vehicle liability insurance which purported to exclude coverage for bodily injury to the insureds' children sustained while they were riding in an automobile driven by their mother. 823 S.W.2d at 480–82. The Supreme Court held § 303.025 required the policy to provide coverage in the amounts specified by § 303.190.2, but a household exclusion could bar coverage in excess of those amounts. *Id.* at 481–83.

*Northland Insurance*, 869 S.W.2d 157, which the Schuberts strive to distinguish, involved an accident in 1991. An employee of the insured was driving a motor vehicle within the scope and course of his employment. *Id.* He was involved in a one-vehicle accident which caused his death. *Id.* The insured had no more than four employees, hence the workers' compensation law did not apply (a circumstance present in the instant case). *Id.* at 157–58. The insured's motor vehicle liability insurance policy contained an employee exclusion identical to the one in Northland policy T009615. *Id.* at 158.

The Eastern District of this Court noted that TMVFRL identifies certain instances where insurance is not required. *Id.* Section 303.190.5, RSMo 1986, a part of TMVFRL, provides:

"Such motor vehicle liability policy need not insure any liability under any workers' compensation law nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation . . . of any such motor vehicle. . . ."

The Eastern District held the employee exclusion in the policy there was consistent with the public policy of Missouri as expressed by the General Assembly in § 303.190.5. *Id.* at 159. Accordingly, the Eastern District held the employee exclusion valid despite *Halpin*, 823 S.W.2d 479, and other cases which, according to the deceased employee's family, nullified family exclusions and other exclusions.

Focusing on § 303.190.5, upon which the Eastern District relied in *Northland Insurance*, the Schuberts argue: "Unlike Chapter 303, Section 390.126 does not contain any statutory authorization for exclusion of injuries to employees." Therefore, insist the Schuberts, "[T]his court should reverse the . . . judgment and hold that the employee exclusion clause in Northland's policy is void under the circumstances of this case."

As noted earlier,[16] the version of § 390.126 in force on the date Dannie was allegedly injured was the version in RSMo 1978. That version assigned to the Public Service Commission the duty of determining the "forms" and "conditions" of a motor carrier's liability insurance policy necessary to adequately "protect the interests of the public in the use of the public highways." The statute required that the insurance policy "bind the obligors thereunder to make compensation for injuries to persons . . . resulting from the negligent operation of such motor carrier." The statute was amended by Laws of Missouri 1986, S.S.H.C.S.H.B. No. 1428, pp. 962–71, which transferred the duty referred to in the second sentence of this paragraph to the Division of Transportation of the Department of Economic Development.

Northland asserts, and we agree, that neither the former version nor the current version of § 390.126 sets forth any detailed requirements for a motor carrier's liability insurance policy. Northland emphasizes that both the former and current versions of § 390.126 mandate that the carrier's lia-

---

**16.** Footnote 6, *supra.*

bility insurance be adequate to protect "the interests of the public." Northland insists there is a "judicially recognized distinction" between "the public" and the carrier's employees. In support of that proposition, Northland cites *Ward v. Curry*, 341 S.W.2d 830 (Mo.1960).

In that case, a worker was injured on the job when struck by a truck. *Id.* at 833. The injured worker was held to be a statutory employee of Stewart, the truck driver's employer, and thus eligible for workers' (then workmen's) compensation benefits. *Id.* at 833–34. The injured worker sued the driver and won a judgment. The injured worker then garnished an insurer which had an insurance policy in force insuring Stewart. *Id.* at 831. The policy excluded coverage for any employee with respect to injury to another employee of the same employer injured in the course of such employment in an accident arising out of the use of an automobile in the business of the employer. *Id.* at 831–32. The injured employee argued that inasmuch as he was only a statutory employee, he was not an employee within the meaning of the exclusion. The Supreme Court rejected the argument and held the exclusion barred coverage. The opinion explained:

"It appearing that [the injured employee] and [the driver] were employees of the same employer, to wit: Stewart, the named insured, and that the purpose of the policy in issue was to insure Stewart's liability to the public, as distinguished from those working for it and entitled to compensation under the Workmen's Compensation Act for injuries sustained in the course of such employment, it must and does follow that the policy in suit, by virtue of the exclusion clause ..., does not cover [the driver's] liability...."

*Id.* at 838–39.

While *Ward* held the exclusion barred coverage, § 390.126 was not in issue, as the insured was not a motor carrier subject to that statute. Consequently, *Ward* is not controlling in this appeal.

A more analogous case is *Short v. Safeco Insurance Company of America*, 864 S.W.2d 361 (Mo.App.W.D.1993), which involved a "fellow employee exclusion" in a motor vehicle liability policy insuring an ambulance company. An ambulance attendant was injured when the ambulance in which he was riding crashed because the driver fell asleep. *Id.* The injured attendant won a judgment against the driver, then attempted to collect it from the insurer. *Id.* at 361–62. The Western District of this Court held the exclusion barred coverage, and rejected an argument that the exclusion was nullified by TMVFRL. *Id.* at 363. The injured attendant also claimed that the exclusion was nullified by statutes which required ambulances to have insurance coverage and which provided that no ambulance license shall be issued or remain in effect unless there is insurance coverage in force for injury to individuals in accidents resulting from any cause for which the owner of the vehicle would be liable on account of any liability imposed by law. *Id.* The Western District denied the challenge and upheld the exclusion. *Id.*

Although *Short* did not involve § 390.126, it did involve statutes that required the ambulance company to have insurance, and it held those statutes did not invalidate the fellow employee exclusion. Thus, by analogy, *Short* supplies at least some authority for Northland's position.

Northland cites several other cases which, according to Northland, upheld employee exclusions and "the co-employee exclusion" against a variety of challenges. However, Northland does not identify any case which upheld an employee exclusion against a challenge that it was nullified by § 390.126. On the other hand, the Schuberts cite no case nullifying an employee exclusion on the ground that it violated § 390.126.

We have endeavored to examine the rules promulgated by the Public Service Commission under § 390.126 which were in effect at the time Dannie was allegedly injured. As best we can determine, they are set forth in the version of 4 CSR 240–110.030 which took effect August 15, 1978.[17] Paragraph "(1)" of

17. We are authorized to take judicial notice, without proof, of the contents of the Code of

State Regulations. § 536.031.5, RSMo 1994.

the rule required a motor carrier operating motor vehicles in or through Missouri by authority of the Public Service Commission to have "public liability and property damage insurance" in various amounts, depending on the type of vehicle and cargo. For a freight vehicle, the required amounts were $100,000 for injury or death of one person, and $300,000 for any one accident.[18] 4 CSR 240–110.030(1)(B). We find nothing in the rule addressing exclusions.

In sum, the parties do not cite, and we cannot find, a Missouri case resolving the Schuberts' first point, and the Public Service Commission rule promulgated under § 390.126 which was in force when Dannie was allegedly injured is silent about exclusions. Because the insured in *Northland Insurance,* 869 S.W.2d 157, was not a motor carrier subject to § 390.126, that case does not resolve this appeal.

Nonetheless, *Northland Insurance* is helpful in that it recognizes that § 303.190.5, RSMo 1986, allows motor vehicle liability policies to exclude coverage for liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured.

We acknowledge, as underscored by the Schuberts, that § 303.350, RSMo 1978, which was in force when Dannie was allegedly injured, provided:

"Notwithstanding anything else herein contained, this chapter shall not apply ... to any common carrier or contract carrier whose operations are subject to the jurisdiction of and are regulated by ... the public service commission of Missouri ... and which shall have satisfied any applicable requirements concerning ... insurance ... imposed by the regulatory authority having jurisdiction over the carrier's operations."

Because of that statute, the Schuberts maintain § 303.190.5 does not declare the public policy of Missouri regarding employee exclusions in insurance policies to which

§ 390.126 applies. In the Schuberts' words, "[I]t is Chapter 390, not 303 which is applicable to [Northland policy T009615]."

Citing *Omaha Indemnity Co. v. Pall, Inc.,* 817 S.W.2d 491, 497 (Mo.App.E.D.1991), the Schuberts remind us that statutes such as § 390.126 have been designed with the protection of the public as the paramount goal. Because the ultimate beneficiary of the insurance will be any third party who is injured, the contractual rights of the parties must yield to the public policy of the state. *Id.* However, *Omaha Indemnity* did not involve an employee exclusion, and it yields no clue as to the public policy of Missouri in regard to such exclusions in liability insurance policies covering motor carriers subject to § 390.126.

Having found nothing else germane to the Schuberts' first point, we formulize the following analysis.

First, we know from *Northland Insurance,* 869 S.W.2d 157, that the employee exclusion in Northland policy T009615 would be valid if policy T009615 was subject to § 303.190.5, RSMo Cum.Supp.1983.[19] That section sets forth the public policy of Missouri regarding such exclusions in insurance policies subject to chapter 303.

Second, *Short,* 864 S.W.2d 361, upheld a "fellow employee exclusion" against a challenge that it was nullified by statutes requiring the insured (an ambulance company) to maintain liability insurance covering injury to individuals in accidents resulting from any cause for which the insured would liable on account of any liability imposed by law. *Id.* at 363.

Third, nullifying the employee exclusion in Northland policy T009615 would place upon an employer who is a motor carrier subject to § 390.126 a requirement that he maintain motor vehicle liability insurance covering injury to his employees while engaged in his employment, when employers who are not motor carriers subject to § 390.126 are allowed by § 303.190.5 to have motor vehicle

---

**18.** The Schuberts do not claim Northland policy T009615 failed to meet those requirements.

**19.** That was the version of § 303.190.5 in force when Dannie was allegedly injured. It was carried forward unchanged in RSMo 1986, which was controlling in *Northland Insurance.*

liability insurance excluding such coverage. The Schuberts offer no plausible justification for a public policy treating employers who are motor carriers differently from all other employers.

■ Fourth, in enacting § 390.126, the General Assembly evidently recognized that motor carriers operate vehicles of various sizes and types hauling diverse cargo and varying numbers of passengers. Section 390.126 assigns to a regulatory agency the duty of determining the "forms" and "conditions" of liability insurance such carriers must maintain to adequately "protect the interests of the public" in using public highways. As observed by Northland, the apparent intent of § 390.126 is to ensure that a carrier maintains insurance in amounts commensurate with the hazards to the public inherent in the carrier's operations, and to establish "administrative procedures to ensure compliance." It is inferable that the General Assembly concluded a regulatory agency, instead of the Assembly, could better determine such issues as whether a carrier's liability insurance should provide coverage for injury to the carrier's employees while engaged in the carrier's employment, hence § 390.126 is silent on the subject. While there is no direct evidence that the Public Service Commission approved Northland policy T009615 issued to Straw, there is deposition testimony by Straw that he obtained the policy to "legally qualify" him to operate in Missouri and other states. He purchased the policy from an insurance agency in Missouri. The Schuberts do not claim policy T009615 failed to satisfy the "forms" and "conditions" required by the Public Service Commission. On this record, it is reasonable to infer that the Commission allowed the Northland policy to contain the employee exclusion.

Finally, the goal of § 390.126 is to protect the public. *Omaha Indemnity*, 817 S.W.2d at 497. As explained in *Ward*, 341 S.W.2d at 838, the purpose of an employer's motor vehicle liability insurance is to insure liability to the public, as distinguished from those working for the employer.

For those five reasons, we hold the employee exclusion in Northland policy T009615 was not invalidated by § 390.126, RSMo 1978. The Schuberts' first point is denied.

In their second, and final, point, the Schuberts attack the employee exclusion in GNIC policy TP414546 on the same ground that they attacked the employee exclusion in the Northland policy. What we said in rejecting the Schuberts' first point applies with equal force to their second. Their attack is without merit. We again emphasize we have assumed, without deciding, that Missouri law applies.[20]

Additionally, the Schuberts maintain the trial court erred in finding that neither Rail Water nor Nationwide was named an insured on the GNIC policy at the time Dannie was allegedly injured. The Schuberts assert there was a genuine issue of fact about that. Because we have rejected the Schuberts' attack on the employee exclusion in the GNIC policy, the issue in this paragraph is moot.

One loose end remains. GNIC never filed a counterclaim or cross-claim for declaratory relief. Its motion for summary judgment sought judgment in its favor on the Schuberts' cross-claim, which the Schuberts dismissed before the trial court entered judgment. Whether granting GNIC declaratory relief was proper in such circumstances is an interesting question. However, the Schuberts do not attack the judgment on that ground, hence we need not consider it.

Judgment affirmed.

SHRUM, C.J., and PARRISH, J., concur.

---

**20.** As GNIC points out, it can make a stronger argument than Northland against applying Missouri law. Unlike the Northland policy, which was purchased by Straw from an insurance agency in Missouri, the GNIC policy shows the address of GNIC as Denver, Colorado, and the address of Rail Water as Portland, Oregon.