Kathy Lynne WILSON and Timothy Brandt, b/n/f Margaret Brandt, Appellants,

v.

TRADERS INSURANCE COMPANY, Respondent.

Nos. 24960, 24962.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 27, 2003.

Motion for Rehearing or Transfer Denied
Feb. 19, 2003.

Application for Transfer Denied
April 1, 2003.

Stephen F. Gaunt, David L. Steelman, Steelman & Gaunt, Rolla, for appellants.

Michael E. McCausland, Theresa Shean Hall, Harris, McCausland & Scmitt, P.C., William G. Beck, Alok Ahuja, Lathrup & Gage, Kansas City, for respondent.

ROBERT S. BARNEY, Judge.

In appeal number 24960, Appellant, Kathy L. Wilson, ("Appellant Wilson") appeals the judgment of the trial court of Pulaski County granting summary judgment in favor of Respondent, Traders Insurance Company, ("Traders") on Traders' motion for summary judgment. Likewise, in appeal number 24962, Appellant, Timothy Brandt, ("Appellant Brandt") appeals the judgment of the same trial court granting summary judgment in favor of Traders upon Traders' motion for summary judgment.[1]

■ The respective summary judgments, discussed more fully below, were entered on Appellants' respective petitions against Traders requesting relief under section 379.200, RSMo 2000, commonly referred to as an equitable garnishment proceeding, following the entry of separate judgments in favor of each named Appellant against Desiree Payne, the insured herein. As a general rule, an equitable garnishment proceeding is available to reach insurance money in satisfaction of a judgment. *Hangley v. American Family Mut. Ins. Co.*, 872 S.W.2d 544, 545 (Mo. App.1994).

I.

Underlying this action is an automobile accident that occurred on February 7, 1999. In the accident in question, Desiree Payne was operating her vehicle and crossed the center line of the highway and collided with a vehicle driven by Appellant Wilson in which Appellant Brandt was a passenger. Both Appellants were injured.

As more fully discussed below, Appellants, in their respective actions, contend that Ms. Payne was covered by Traders' Insurance Policy No. TR00297071, which contained policy limits of $25,000.00 per person and $50,000.00 per accident together with policy provisions relating to interest payments on awarded judgment against the insured and providing for other benefits.

According to the record, at some point prior to August 4, 1999, Appellant Brandt was informed by Traders that its policy issued to Ms. Payne was "not in effect on February 7, 1999." On November 17, 1999, Appellant Wilson sent a written settlement offer of $25,000.00 by certified mail to Traders. The settlement offer was rejected by Traders on the basis there was no insurance coverage for Desiree Payne at the time of the February 7, 1999, accident.

Both Appellants filed separate claims against Ms. Payne in the trial court seeking to recover damages arising from the automobile accident. Traders again denied coverage under its policy and refused to provide a defense to the claims brought against Ms. Payne.

On August 4, 1999, Appellant Brandt called up his motion for judgment by default against Ms. Payne, and the trial court received evidence on Appellant Brandt's claim. The trial court found that Ms. Payne had been properly served and had failed to answer or otherwise plead. The trial court entered its judgment on the same date and awarded Appellant Brandt $500,000.00 in actual and $500,000.00 puni-

---

1. The trial court also denied each Appellant's separate motion for summary judgment against Traders. Because of common facts and common pertinent provisions of the law, we have consolidated both appeals for purposes of this opinion, distinguishing between the Appellants where appropriate.

tive damages for a total recovery of $1,000,000.00, and expressly set out Appellant Brandt's entitlement to post judgment interest. *See* § 408.040.1 [2].

On January 4, 2000, Appellant Wilson and Ms. Payne entered into an agreement pursuant to section 537.065. Subsequently, Appellant Wilson's claim against Ms. Payne was tried before the trial court on April 27, 2000. Ms. Payne appeared with counsel and Appellant Wilson obtained a judgment against her in the amount of $6,508,204.21 on the same date. Appellant Wilson was also awarded prejudgment interest pursuant to the provisions of section 408.040.2.

Thereafter, each Appellant brought an equitable garnishment action against Traders seeking to attach and garnish "all insurance money due and owing by [Traders], to the satisfaction of the judgment...." [3]

On May 23, 2001, Traders seasonably filed separate motions and suggestions to pay money into the trial court arising from the trial court's judgments in favor of each Appellant. Specifically, in Appellant Wilson's case, Traders sought the trial court's permission to deposit with the trial court the sum of $25,000.00, together with $2,410.27, which Traders contended represented post-judgment interest earned at the rate of 9% per annum from the date of judgment, for a total payment of $27,410.27. On June 13, 2001, the trial court authorized the deposit of the $27,410.27 into an interest bearing account, but expressly set out that it made "no determination as to the amount owned by [Traders], in this action, which the parties [agree] remains in dispute."

In Appellant Brandt's case, Traders submitted a check to the circuit clerk in the amount of $29,056.16, inclusive of $4,056.16 for post-judgment interest that had accrued since the time of the judgment in Appellant Brandt's claim. On June 13, 2001, the trial court ordered the clerk to deposit the sum of $29,056.16 into an interest bearing account, and as in Appellant's Wilson's claim, set out that the court "makes no determination as to the amount owed by [Traders] in this action, which the parties agree remains in dispute."

## II.

The record shows that Traders issued its automobile insurance liability policy with an initial effective date of November 2, 1998, to Desiree Payne. Although the policy had been in effect during certain earlier periods, as relevant here, the policy had a "policy period" from December 30, 1998, to January 30, 1999.

Traders acknowledges filing an SR–22 financial responsibility form dated "01/04/99" with the Director of Revenue on behalf of Ms. Payne. By this filing, Traders certified that "it had issued to [Desiree Payne] a motor vehicle liability policy as required by the financial responsibility laws of this State," and that the policy was effective from 12/30/98, "until cancelled or terminated in accordance with the financial responsibility laws and regulations of this State."

Later, as a result of Ms. Payne's failure to pay the renewal premium when due, Traders filed an SR–26 form with the Missouri Department of Revenue on February 2, 1999, notifying the Department of Revenue that Traders had terminated the coverage it had issued Ms. Payne.

In separate judgments arising from the various motions for summary judgment of

---

**2.** Unless otherwise set out, all statutory references are to RSMo 1994.

**3.** Ms. Payne was also joined as a party defendant.

the parties, the trial court determined that the policy in question "expired at 12:01 a.m. on January 30, 1999" and that "Traders' only continuing obligation arose from the [MVFRL] and more specifically ... 'insurance so certified' in Section 303.210 R.S.Mo."[4] The trial court specifically found that the:

'insurance so certified' as referred to in Section 303.210 R.S.Mo., only applies to the $25,000 'per person' limit for bodily injury or death, the $50,000 per occurrence limit for bodily injury or death, and the $10,000 limit for property damage, as referred to in Section 303.190 R.S.Mo. ... any coverage beyond the amount of $60,000 liability limits described in Section 303.190 R.S.Mo., is outside of the scope and mandates of the MVFRL. The Court further finds that any claim for pre-judgment or post-judgment interest would be (if applicable) an insurance contractual obligation and is not mandated under the MVFRL.

In its judgment relating to Appellant Wilson, the trial court determined that by Traders' prior payment of $27,410.17 into the court, Traders had satisfied all of its obligations to Appellant Wilson and Ms. Payne. Accordingly, the trial court determined that Traders was entitled to summary judgment as a matter of law, subject to the foregoing payment.

Likewise, in its judgment relating to Appellant Brandt, the trial court determined that by Traders' prior payment of $29,056.16 into the court, Traders had also satisfied all of its obligations to Appellant Brandt and Ms. Payne. Accordingly, the trial court determined that Traders was

entitled to summary judgment as a matter of law, subject to the foregoing payment.

### III.

In our analysis we are guided by the following legal precepts. "A motion for summary judgment will be granted if 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' " *Letsinger v. Drury College,* 68 S.W.3d 408, 410 (Mo. banc 2002); Rule 74.04(c)(3), Missouri Court Rules 2000. "On appeal from a summary judgment, this Court reviews the record in the light most favorable to the party against whom the judgment was entered." *Id.; see ITT Comm. Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). "This Court does not defer to the trial court's judgment granting summary judgment because review is de novo." *Letsinger,* 68 S.W.3d at 410.

■ "An equitable garnishment action consists of proof that plaintiff has obtained a judgment in his favor against an insurance company's insured during the policy period and the injury is covered by the insurance policy." *Peck v. Alliance Gen. Ins. Co.,* 998 S.W.2d 71, 74 (Mo.App.1999). "[T]he insurance company may assert any defense against the injured person that it might have asserted as a defense in an action brought against it by its assured." *Johnston v. Sweany,* 68 S.W.3d 398, 401 (Mo. banc 2002).

■ In the absence of ambiguity and in the absence of a statute or public policy requiring coverage, we are to enforce a policy of insurance as it is written. *State Farm Mut. Auto. Ins. Co. v. Butler,* 904

---

**4.** We discern that by the trial court's use of the initials "MVFRL," reference was made to the Missouri Motor Vehicle Financial Responsibility Law. We observe that the Motor Vehicle Financial Responsibility Law is found in Chapter 303, particularly §§ 303.010–303.070. *See Halpin v. American Family Mut. Ins. Co.,* 823 S.W.2d 479, 480 (Mo. banc 1992).

S.W.2d 350, 352 (Mo.App.1995). "To the extent not specifically required by the Motor Vehicle Financial Responsibility Law, or other governing statutes, parties are free to contract as to terms of liability insurance." *Budget Rent A Car v. Guaranty Nat. Ins. Co.*, 939 S.W.2d 412, 415 (Mo.App.1996).

■ "Rules of a state administrative agency duly promulgated pursuant to properly delegated authority have the force and effect of law and are binding upon the agency adopting them." *Missouri Nat. Educ. Assoc. v. Missouri State Bd. of Mediation*, 695 S.W.2d 894, 897 (Mo. banc 1985); *see Community Bancshares, Inc. v. Secretary of State*, 43 S.W.3d 821, 825 (Mo. banc 2001).

Lastly, "[w]hen construing a statute, courts must 'ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning.'" *Andresen v. Board of Regents*, 58 S.W.3d 581, 587 (Mo.App.2001) (quoting *Farmers' & Laborers' Coop. Ins. Ass'n v. Dir. of Rev.*, 742 S.W.2d 141, 145 (Mo. banc 1987)). "Statutes relating to the same subject matter are considered *in pari materia* and are to be construed together, 'even though the statutes are found in different chapters and were enacted at different times.'" *Id.* (quoting *State ex rel. Dir. of Rev. v. Gaertner*, 32 S.W.3d 564, 566 (Mo. banc 2000)).

## IV.

In their first point relied on, in their respective appeals, Appellants maintain the trial court erred in granting summary judgment for Traders based upon a finding that the policy issued by Traders to each Appellant had expired on January 30, 1999. Each Appellant maintains the policy in question was in effect on February 7, 1999, the date of the accident, because Traders had certified the policy as proof of financial responsibility under section 303.170 by filing an SR–22 form with the Director of Revenue.[5]

Appellants argue that both the Motor Vehicle Financial Responsibility Law (hereafter "MVFRL") and state regulations implementing the law, together with section 303.210 mandate that coverage under the policy continued for ten days after Traders filed an SR–26 form with the Missouri Director of Revenue on February 2, 1999, terminating policy coverage.[6] In like

---

**5.** Section 303.170 provides that:

1. Proof of financial responsibility may be furnished by filing with the director the written certificate of any insurance carrier duly authorized to do business in this state certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility. Such certificate shall give the effective date of such motor vehicle liability policy, which date shall be the same as the effective date of the certificate, and shall designate by explicit description or by appropriate reference all motor vehicles covered thereby, unless the policy is issued to a person who is not the owner of a motor vehicle.

2. No motor vehicle shall be or continue to be registered in the name of any person required to file proof of financial responsibility unless such motor vehicle is so designated in such a certificate.

**6.** Section 303.210 provides that:

When an insurance carrier has certified a motor vehicle liability policy under section 303.170 or a policy under section 303.180, the insurance so certified shall not be canceled or terminated until at least ten days after a notice of cancellation or termination of the insurance so certified shall be filed in the office of the director of revenue, except that such policy subsequently procured and certified shall, on the effective date of its certification, terminate the insurance previously certified with respect to any motor vehicle designated in both certificates.

With respect to SR–22 and SR–26 forms, 20 CSR 500–2.300(4)(A) sets out:

manner, both Appellants respectively assert in their second point that the policy in question was in effect at the time of the accident because Traders had certified the policy as proof of financial responsibility under section 303.170 and "Traders['] insurance contract provided that when certified it would comply with Missouri law, including § 303.210 and regulations implementing that statute" and that the policy was "modified to provide as required by Missouri law that the policy continued for ten days after Traders filed an SR–26 Form with the Director of Revenue on February 2, 1999."

In their respective third and final point, Appellants premise trial court error resulting from the granting of summary judgment in favor of Traders and against each Appellant when the trial court found Traders had satisfied all obligations owed each

Appellant "by paying $25,000.00 plus post-judgment interest on $25,000.00 into court because Traders did not pay all interest due" under the policy issued to Ms. Payne.

Accordingly, Appellant Wilson maintains the trial court erred because she was entitled not only to the policy limits but also to prejudgment interest of $616.00 (100 days between 11/17/99 and 4/27/00) as provided by the "Supplementary Payments" provision of "Part B" of the policy,[7] at the rate of interest as provided by section 408.040. Additionally, Appellant Wilson argues that she was also entitled to post-judgment interest of $661,162.10, on her award of $6,508,204.21, as provided by the terms of the "Supplementary Payments" provision of "Part A" of the policy,[8] per the legal rate of interest at 9% per annum set out in section 408.040.1.

The provisions of sections 303.170 and 303.180, RSMo specify how persons required to furnish proof of financial responsibility with the director of revenue may do so by filing a written certificate of insurance, certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to file that proof. Those certified policies can be canceled only in accordance with the provisions of section 303.210, RSMo. Documenting that a certified policy is in force is accomplished by filing a form, typically an SR–22 form with the director of revenue. The cancellation or termination of a certified policy is accomplished by filing an SR–26 form with the director of revenue. Any insurer providing coverage to an insured under a certified policy may file, on behalf of him/herself and the person covered, any such form as the situation requires.

20 CSR 500–2.300(5)(A) sets out that:

When an insurance carrier has certified a motor vehicle liability policy under section 303.170 or 303.180, RSMo, the insurance so certified shall not be canceled or terminated until at least ten (10) days after a notice of cancellation or termination of the insurance has been filed with the office of the director of revenue by means of an SR–26 form. This notice of cancellation or termination will not be required where one (1) certified policy is

replaced with a new or renewed certified policy and there has been no gap in coverage, nor shall it be required where the time period for maintaining proof of financial responsibility has expired.

7. Part B set out:

The following is added to the Supplementary Payments provision:
SUPPLEMENTARY PAYMENTS
In addition to our limit of liability we will pay on behalf of an 'insured':
Prejudgment interest awarded against the 'insured' on that part of the judgment we pay. If we make an offer to pay our limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

8. In pertinent part, the "Supplementary Payments" provision of "Part A" of the policy sets out that:

In addition to our limit of liability, we will pay on behalf of an "insured":
* * *
3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

Likewise, Appellant Brandt asserts in his appeal the trial court erred because he was entitled to the sum of $192,179.54 from Traders, broken down as follows: $25,000.00, representing the policy limits for liability coverage together with $167,179.54 representing post-judgment interest owed as provided by the "Supplementary Payment" provision of Part A of the policy, see footnote 8, *supra*, at the rate of 9% per annum as provided by section 408.040.1.

On the other hand, Traders contends that the policy in question had expired by its terms at 12:01 a.m. on January 30, 1999. Traders, nevertheless, concedes the policy continued in force at the time of the February 7, 1999, accident because of the statutory directive found in section 303.210 and attendant governing regulations. But Traders argues that the only benefits available to either Appellant after January 30, 1999, were those mandated by the MVFRL, and in particular section 303.190.2(2).

Therefore, Traders maintains its payment to the trial court in the principal amount of $25,000.00 per Appellant, pursuant to the *minimum benefits* required under the MVFRL for a motor vehicle liability policy, as set out in section 303.190.2(2), together with *post* judgment interest on this sum satisfied all of its policy's obli-

gations arising from each appellant's injuries.

## V.

■ In our review of Appellants' first two points, which we review conjunctively, we observe that Appellants concede that "*if* the policy had *not* been certified, i.e., if there had not been an SR–22 filed, *then* the policy would have terminated" and there would have been no policy coverage on the date of the accident.

Appellants argue, nevertheless, that the "Financial Responsibility" provision of "Part A" of Traders' policy provides that the "policy shall comply with the law." [9] Therefore, Appellants maintain the termination provision of the policy in question was modified to comply with Missouri law. Accordingly, Appellants assert that under section 303.210 the "certified" policy in its entirety continued in force for ten days, and since the accident occurred within this time frame coverage under the policy was provided to the insured. Therefore, they maintain the policy's benefits provisions were not limited by the minimum benefit levels set out in section 303.190.2(2).[10]

Appellants also maintain that here, unlike household exclusion cases as exemplified in *Halpin*, the trial court below was not faced with deciding whether to read

---

9. In pertinent part, "Part A" of the policy provided as follows:

    Financial Responsibility
    When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

10. Section 303.190.2(2) sets out in pertinent part that:

    Such owner's policy of liability insurance: (2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with

the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising ... subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident.

coverage into the policy that was not contracted for.

■ We observe that:

The Motor Vehicle Safety Responsibility Law, §§ 303.110–303.370, RSMo 1978, L.1953, p. 569 (as amended §§ 303.010–303.370, RSMo 1986, L.1986, S.B. 424) was not a compulsory insurance law. It rather required the owner of a motor vehicle involved in an accident resulting in more than $500 of damages to provide proof of financial responsibility, under pain of suspension of operator's license. *Halpin,* 823 S.W.2d at 480. As of July 1, 1987, the title of Chapter 303 was changed to the Motor Vehicle Financial Responsibility Law. The thrust of Chapter 303 became a before-the-fact proof of financial responsibility. "It repealed only certain sections of the [old] Safety Responsibility Law." *Id.* The new law, in contrast to the old, requires the owner of a motor vehicle to maintain "financial responsibility" without regard to driving history. *See id.; see also* §§ 303.025 and 303.160.[11] It is, "for all practical purposes, a compulsory insurance law." *Halpin,* 823 S.W.2d at 481.

■ "Under the MVFRL, motor vehicle owners may discharge their obligations either by maintaining financial responsibility as provided in section 303.160 RSMo 1994 or with a motor vehicle liability policy which conforms to the requirements of the laws of this state." *White v. Illinois Founders Ins. Co.,* 52 S.W.3d 597, 599 (Mo.App.2001); § 303.025.2. "Most owners and operators of vehicles undertake to satisfy the requirement by purchasing a motor vehicle liability policy." *First Nat. Ins. Co. v. Clark,* 899 S.W.2d 520, 522 (Mo. banc 1995).

■ "Section 303.190 RSMo 1994 sets forth the requirements for two types of liability policies authorized in the state of Missouri, an 'owner's' policy and an 'operator's' policy." *White,* 52 S.W.3d at 599. Either may satisfy the requirements of the MVFRL. *Sisk v. American Family Mut. Ins. Co.,* 860 S.W.2d 34, 36 (Mo.App. 1993).[12]

However, section 303.190.7 provides that "[w]ith respect to a policy which grants such excess or additional coverage the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is required by this section." § 303.190.7. "Neither the MVFRL, nor the *Halpin* decision, require liability coverage exceeding the amounts specified in section 303.190." *American Standard Ins. Co. v. Hargrave,* 34 S.W.3d 88, 92 (Mo. banc 2000); *see State Farm Mut. Auto. Ins. Co. v. Scheel,* 973 S.W.2d 560, 567 (Mo.App.1998). "What the MVFRL requires is that each valid owner's or opera-

---

**11.** The pertinent provisions of section 303.025 reads as follows:

1. No owner of a motor vehicle registered in this state shall operate ... or authorize any other person to operate the vehicle, unless the owner maintains the financial responsibility as required in this section.

2. A motor vehicle owner shall maintain his financial responsibility in a manner provided for in section 303.160, or with a motor vehicle liability policy which conforms to the requirements of the laws of this state.

"According to § 303.160 ... financial responsibility may be established by filing one of the following: (1) a certificate of insurance, (2) a bond, (3) a certificate of deposit of money or securities, and (4) a certificate of self-insurance." *Koehr v. Director of Revenue,* 863 S.W.2d 663, 665 (Mo.App.1993).

**12.** The policy in question is an "owner's policy of liability insurance" as defined by section 303.190.2. It also has vestiges of an operator's policy of liability insurance. § 303.190.3. "The public policy of this state is satisfied when there is an owners policy of liability insurance sufficient to meet the minimum requirements of Missouri's financial responsibility law." *Clark,* 899 S.W.2d at 523; § 303.025.

tor's policy provide the minimum liability limits specified, $25,000 for bodily injury to or death of one person in any one accident and $50,000 for bodily injury to or death of two or more persons in any one accident [hereafter, '25/50/10 benefits']." *Hargrave,* 34 S.W.3d at 92.

As previously set out, the record shows that on January 4, 1999, prior to the accident in question, Traders had filed an SR–22 with the Department of Revenue, certifying that it had issued a motor vehicle liability policy to Desiree Payne, "as required by the financial responsibility laws and regulations of this state." The "insurance so certified" referred to the motor vehicle liability policy that had been certified pursuant to section 303.170.

And the "proof of responsibility" mentioned in section 303.170 is the amount set out in § 303.190.2(2), i.e., the "25/50/10" benefits. *See Hargrave,* 34 S.W.3d at 92. "The plain purpose of the 1986 amendment is to make sure that people who are injured on the highways may collect damage awards, within limits, against negligent motor vehicle operators." *Halpin,* 823 S.W.2d at 482; *see State Farm Mutual Auto. Ins. Co. v. Ballmer,* 899 S.W.2d 523, 527 (Mo. banc 1995).[13]

Accordingly, once Traders "certified" its motor vehicle liability policy by filing an SR–22 form with the Director of Revenue, the "insurance so certified" as showing proof of responsibility under section 303.170 was limited by the provisions of sections 303.190.2(2) and 303.190.7. Therefore, while the instant policy that had been "certified," as provided by section 303.170, continued in force on Febru-

ary 7, 1999, under the facts of this case the maximum principal benefits available under the MVFRL or under the policy's specific provisions adopting the provisions of the MVFRL, were "25/50/10," exclusive of interest and costs. §§ 303.190.2(2); 303.190.7; *see Halpin,* 823 S.W.2d at 482. Points One and Two of each appeal are denied.

■ We now turn to Appellants' respective third allegation of trial court error where they each contend entitlement to post-judgment and/or pre-judgment interest per the terms of the policy. We find this issue against Appellants, except as noted in our discussion.

Based upon our discussion of Points One and Two, we determine that the only additional benefits either Appellant is entitled to are those set out in section 408.040, providing for post-judgment and/or pre-judgment interest at a rate of 9% per annum, based on statutorily imposed benefits available to each Appellant under the MVFRL—that is, the principal amount of $25,000.00 per Appellant, together with interest and costs. *See* §§ 303.190.2(2); 303.190.7.

While section 303.190.2(2) sets out that an owner's policy of liability insurance shall provide for minimum benefit levels of "25/50/10," the sub-section also gives express recognition that this minimum benefit level is "exclusive of interest and costs...." § 303.190.2(2).

It is our view the phrase "exclusive of interest and costs," in the sense used in the sub-section, denotes that interest and costs are also recoverable, with interest

---

**13.** "In *Halpin* the Supreme Court held that the MVFRL partially invalidated the household exclusion clause of an automobile liability policy because the clause excluded liability coverage for injuries to an insured's household's members." *State Farm Fire & Cas. Co. v. Ricks,* 902 S.W.2d 323, 324 (Mo.App.1995). "The court found that public policy required that a liability policy provide the coverage indicated in § 303.190 so that the insured will be in compliance with § 303.025." *Id.* "It concluded that 'the legislature had a purpose of requiring motor vehicle liability policies to provide coverage coextensive with liability, subject to the statutory limits.'" *Id.* (quoting *Halpin,* 823 S.W.2d at 482).

being based on the minimum benefit levels set out in section 303.190.2(2). To hold otherwise would make a redundancy of the phrase "exclusive of interest and costs," because the phrase is superfluous and unnecessary if the legislative intent was to limit recovery solely to "25/50/10" benefits. "The legislature is presumed not to enact meaningless provisions." *Wollard v. Kansas City,* 831 S.W.2d 200, 203 (Mo. banc 1992). "The provisions of a legislative act must be construed together and, if possible, all provisions must be harmonized and every clause given some meaning." *Id.* "In interpreting a statute we will not presume the legislature enacted a redundant provision." *Mo. Hosp. Ass'n v. Air Conservation Comm'n,* 874 S.W.2d 380, 395 (Mo.App.1994). Furthermore, had the legislature intended to preclude recovery of interest and costs, logically it would have used the phrase "inclusive of interest and costs," in the sense of limiting the benefits available.[14] Indeed, Traders has given tacit recognition of this interpretation of the interest provisions of this sub-section by having deposited with the trial court the sum of $2,410.27, representing post-judgment interest on $25,000.00 due Appellant Wilson, and the sum of $4,056.16, representing post-judgment interest on $25,000.00 due Appellant Brandt. Point denied in part and affirmed in part.

Accordingly, in appeal number 24960, in addition to the principal sum of $25,000.00, Appellant Wilson is entitled to pre-judgment interest pursuant to section 408.040.2 in the sum of $616.00, as demanded, together with post-judgment interest pursuant to § 408.040.1, from April 27, 2000 to June 13, 2001, being the date that the trial court authorized the deposit of Traders' funds into an interest bearing account.

In appeal number 24962, Appellant Brandt is entitled to post-judgment interest pursuant to section 408.040.1, based on a recovery of $25,000.00 (for *actual* damages) from August 4, 1999 to June 13, 2001, being the date that the trial court authorized the deposit of Traders' funds into an interest bearing account.

The judgment in appeal number 24960 is affirmed in part and reversed in part, and the cause is remanded for further proceedings and entry of judgment consistent with this opinion.

The judgment in appeal number 24962 is affirmed in part and reversed in part, and the cause is remanded for further proceedings and entry of judgment consistent with this opinion.

MONTGOMERY, P.J., and GARRISON, J., concur.

---

14. Webster's Ninth New College Dictionary (Copyright 1985 by Merriam–Webster Inc.), defines the prepositional phrase "exclusive of" as "not taking into account—(there were four of us *exclusive of* the guide)". Whereas, the prepositional phrase "inclusive of" is defined as "including or taking into account—(the cost of building *inclusive of* materials)."