

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| HONG LU, | ) | No. ED104197 |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, | ) | |
| | ) | |
| and | ) | Honorable Lawrence J. Permuter, Jr. |
| | ) | |
| CRYSTAL GUNCKEL, | ) | |
| | ) | |
| Respondents. | ) | FILED: November 22, 2016 |

## Introduction

Appellant Hong Lu ("Lu") appeals the trial court's grant of summary judgment in favor of insurer Automobile Club Inter-Insurance Exchange ("ACIIE") in her action for equitable garnishment. Lu was awarded a judgment against Crystal Gunckel ("Gunckel") for damages suffered by Lu while Gunckel was driving her boyfriend's Ford Focus, which the boyfriend had recently purchased from his father. On appeal, Lu contends that the trial court erred in granting summary judgment for ACIIE because Gunckel was an insured under the father's automobile insurance policy. Lu alternatively argues that the insurance coverage on the Ford Focus was in

force on the date of the accident because Section 303.210[1] required ACIIE to give ten days' notice to the Director of Revenue (the "Director") before ACIIE could terminate insurance coverage on the Ford Focus, which did not occur here. The material facts are not genuinely disputed. Because Gunckel was not an insured under the father's policy, and because Section 303.210 did not require ACIIE to give notice of its actions to the Director, the trial court did not err in granting summary judgment for ACIIE. We affirm.

## Factual and Procedural History

The dispute centered around ACIIE's liability on an automobile insurance policy. Viewed in the light most favorable to Lu, the record contains the following uncontroverted facts.

ACIIE issued an automobile insurance policy to Thomas Sanders ("Father")[2] and his wife, who were the named insureds. The policy ran from June 3 through December 3, 2014, and listed Father's Ford Focus (the "Ford") as an insured vehicle.

On November 20, 2014, Father sold the Ford to his son, Jonathan Sanders ("Son"). Father and Son executed the certificate of title originally issued to Father for the Ford, and then Father permanently relinquished possession of the vehicle to Son.[3] Five days later Father informed ACIIE of the Ford's sale. ACIIE amended Father's policy to remove the Ford from the policy's declarations page, effective November 20, 2014.[4]

---

[1] All statutory references are to RSMo (2000), unless otherwise noted.
[2] We use "Father" and "Son" for Thomas and Jonathan Sanders to provide clarity. We intend no disrespect.
[3] ACIIE submitted this proposed undisputed material fact: "On November 20, 2014, Thomas T. Sanders sold his 2003 Ford Focus to his son, Jonathan T. Sanders and permanently relinquished possession at that time." Lu objected to the authenticity of the underlying exhibit in her response, but did not otherwise dispute ACIIE's proposed uncontroverted fact. The trial court subsequently granted leave for ACIIE to file a certified copy of the executed certificate of title, which ACIIE did, and Lu made no further objections. Thus, we treat both the certificate of title and the fact that Father permanently relinquished possession of the Ford as undisputed facts. Rule 74.04(c)(2).
[4] Son registered the Ford after the accident, and the State of Missouri issued him a new certificate of title on December 8, 2014.

2

Six days after the sale, on November 26, Lu was involved in a car accident with Gunckel. Gunckel was Son's girlfriend at the time and was driving the Ford with Son's permission. Gunckel was not a member of Father's household.[5]

After the accident, Lu sued Gunckel for the property damage to her vehicle stemming from the collision and was awarded a judgment for $15,078. Subsequently, Lu sued ACIIE for equitable garnishment under Section 379.200. Lu claimed that ACIIE was liable for the damage caused by Gunckel under Father's automobile insurance policy. The relevant policy provisions will be discussed in detail below. Lu and ACIIE filed cross-motions for summary judgment. Without explanation, the trial court granted ACIIE's motion, denied Lu's motion, and entered judgment in favor of ACIIE and against Lu. This appeal follows.

## Point on Appeal

In her sole point on appeal, Lu argues that the trial court erred in granting summary judgment in favor of ACIIE. Lu contends that because Gunckel was an insured under Father's policy at the time of the accident, ACIIE insured against Gunckel's negligence. Lu alternatively asserts that even if the revised terms of the policy no longer covered the Ford, the original coverage nevertheless was still in place because Section 303.210 required ACIIE to continue coverage on the Ford for ten days after ACIIE notified the Director that the Ford was removed from Father's policy, which did not occur here.

---

[5] ACIIE supported this fact with an affidavit from Father. In her response to ACIIE's proposed fact, Lu objected that the issue of whether Gunckel was a member of Father's household called for a legal conclusion. This objection was improper: "Whether a person lived in another's household is a question of fact." Reed v. Am. Standard Ins., 231 S.W.3d 851, 853 (Mo. App. W.D. 2007). Lu did not otherwise submit evidence to create a dispute as to this fact. Rule 74.04(c)(2). Because Lu failed to create a genuine dispute, we accept as undisputed that Gunckel was not Father's household member.

3

## Standard of Review

When considering an appeal from a grant of summary judgment, our review is essentially de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). As the trial court's judgment is founded on the record submitted and the law, we need not defer to the trial court's order granting summary judgment. Id. We review the record in the light most favorable to the party against whom judgment was entered, and the non-movant receives the benefit of all reasonable inferences from the record. Id. We will affirm where the pleadings, depositions, affidavits, answers to interrogatories, exhibits, and admissions establish that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Stanbrough v. Vitek Solutions, Inc., 445 S.W.3d 90, 96 (Mo. App. E.D. 2014).

## Discussion

Under Rule 74.04(c),[6] a defending party—here, ACIIE—may establish the right to judgment as a matter of law by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense." Goerlitz v. City of Maryville, 333 S.W.3d 450, 453 (Mo. banc 2011) (quoting ITT Commercial Fin. Corp., 854 S.W.2d at 381). "Each of these three methods individually 'establishes the right to judgment as a matter of law.'" Id.

---

[6] All rule references are to Mo. R. Civ. P. (2016).

Once the defending party establishes this prima facie case, the burden shifts to the non-movant. ITT Commercial Fin. Corp., 854 S.W.2d at 381. At this point, "the non-movant's *only* recourse is to show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed." Id. (Emphasis in original.) The non-movant may not rest on mere allegations or denials of fact; the response shall set forth specific facts with evidentiary support showing that there is a genuine issue for trial. Id.; Rule 74.04(c)(2).

Here, Lu asserted a claim against ACIIE for equitable garnishment under Section 379.200. In a suit for equitable garnishment, the injured party can seek recovery against the tortfeasor's insurer. Carroll v. Missouri Intergovernmental Risk Mgmt. Ass'n, 181 S.W.3d 123, 126 (Mo. App. W.D. 2005). "An equitable garnishment action consists of proof that plaintiff has obtained a judgment in his favor against an insurance company's insureds during the policy period and the injury is covered by the insurance policy." Peck v. Alliance Gen. Ins. Co., 998 S.W.2d 71, 74 (Mo. App. E.D. 1999).

To support the grant of summary judgment, ACIIE argues that the undisputed facts negated Lu's equitable-garnishment claim. See Goerlitz, 333 S.W.3d at 453. ACIIE asserts that Father's policy did not cover Gunckel's use of the Ford because the evidence is undisputed that Gunckel was not an insured under Father's policy at the time of the accident. Thus, because Father's policy did not cover Gunckel when the accident occurred, Lu could not assert an equitable-garnishment claim against ACIIE.

Lu, on the other hand, maintains that Gunckel was an insured under Father's policy. But even if Gunckel was not an insured, Lu argues that ACIIE was still liable because the Motor

5

Vehicle Financial Responsibility Law ("MVFRL")[7] required continued coverage on the vehicle for ten days after ACIIE notified the Director that the Ford was removed from coverage under Father's policy. Parties are free to contract as to the terms of an automobile insurance policy, but only to the extent that the contract complies with the MVFRL. Wilson v. Traders Ins. Co., 98 S.W.3d 608, 613 (Mo. App. S.D. 2003). Because the accident occurred within six days after Father sold the Ford to Son, Lu contends that the MVFRL's required ten-day notice was not met, so coverage continued on the Ford at the time of the accident.

We first consider whether Gunckel was covered as an insured under the terms of Father's policy.

## I. Coverage Under Father's Policy

The interpretation of an insurance policy is a question of law, which we review de novo. Dutton v. Am. Family Mut. Ins. Co., 454 S.W.3d 319, 322 (Mo. banc 2015). "Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." Todd v. Missouri United Sch. Ins. Council, 223 S.W.3d 156, 163 (Mo. banc 2007).

The relevant portion of Father's policy states, "Subject to the Exclusions, we will pay damages for which any **insured** is legally liable because of bodily injury or property damage caused by an auto accident."[8] The facts are uncontroverted that Gunckel was involved in an auto accident while driving the Ford and that this accident caused property damage to Lu's car. It is further undisputed that Gunckel was liable for the property damage to Lu's car. The remaining issue for our consideration is whether Gunckel was an *insured* under Father's policy.

---

[7] Chapter 303, RSMo.

[8] The text of Father's policy included bold-italic terms indicating that those terms were defined by the policy. For clarity, this opinion omits the policy's original bold-italic emphasis, as most of the defined terms are not relevant for our purposes. We quote the policy's definitions when relevant and use bolded terms for our emphasis.

6

Father's policy defined *insured* as:

1. **You** and a **household member**:
   a. In the use of **your insured auto**; and
   b. In the use of any other auto or trailer.

2. Any person other than those identified in paragraph 1 **using your insured auto** with your permission provided the use is within the scope of such permission. ...

Our careful review of the record and the express terms of the insurance policy requires us to reject as meritless Lu's contention that she falls within the policy's definition of an *insured*. *You*, as defined in the policy, was the named insured as shown on the declarations page of the policy and the named insured's spouse (if domiciled in the same household). The declarations page on Father's policy listed only Father and his wife as the named insureds—the *you*. An *insured* could also include a *household member* under prong 1, which Father's policy defines as "a person who is domiciled in your household." Whether an individual qualifies as a household member is a question of fact. Reed, 231 S.W.3d at 853. As explained supra, it is undisputed that Gunckel—Son's girlfriend—was not a member of Father's household. Thus, prong 1 of the definition of an *insured* offers no support to Gunckel, who does not fall within the terms *you* or *household member* under Father's policy.

The second prong of the policy's definition of *insured*, which potentially provides *insured* status to non-household members, also provides Gunckel no relief because Father sold the Ford to Son before the accident occurred. Father's policy grants *insured* status to unrelated persons and non-household members under this second prong if "any" other person was using *your insured auto*. The policy expressly defines the relevant portion[9] of *your insured auto* as

---

[9] The definition also encompasses newly acquired automobiles, trailers, temporary substitute automobiles, and demonstrator automobiles, none of which are relevant here.

7

any "auto shown in the declarations page, **while owned by you.**"[10] Father sold the Ford to Son on November 20, 2014, but the accident did not occur until November 26. When the accident occurred, the Ford was no longer Father's insured auto as defined by the policy because Father no longer owned the Ford. Accordingly, prong 2 does not apply.

Lu suggests the existence of a genuine issue of fact by questioning when ownership of the Ford passed from Father to Son. Lu contends that title to the Ford did not transfer until after the accident, and that Father owned the Ford and his insurance still applied to the Ford on the day of the accident. Our review of the complete summary-judgment record shows that Lu's argument fails because ownership of a vehicle transfers in Missouri upon delivery of a properly assigned certificate of title when the seller delivers the motor vehicle. Section 301.210.1; Allstate Ins. Co. v. Nw. Nat. Ins. Co., 581 S.W.2d 596, 602 (Mo. App. S.D. 1979).

In its statement of uncontroverted facts, ACIIE stated, "On November 20, 2014, Thomas T. Sanders sold his 2003 Ford to his son, Jonathan T. Sanders and permanently relinquished possession at that time." ACIIE's assertion of fact is supported by ample evidence in the record. First, the record contains the certificate of title issued to Father for the Ford. The certificate of title contains the signatures of Father and Son assigning the vehicle to Son, and lists the sale date as "11-20-2014." Second, the record contains an affidavit from Father attesting that he sold the Ford and permanently relinquished possession of the Ford on November 20, 2014. Finally, the record includes the Bill of Sale (Missouri Department of Revenue Form 1957) and the title issued to Son after the sale, both of which note the sale date as November 20, 2014. ACIIE's

---

[10] Lu argues on appeal that ACIIE did not remove the Ford from the declarations page in time, as ACIIE apparently did not mail the new declarations page (removing the Ford) until November 26—the day of the accident. Whether the Ford was listed on the declarations page when the accident occurred is irrelevant, as the facts are not disputed that Father no longer owned the Ford after November 20, 2014.

8

evidence prima facie established that the sale and transfer of ownership occurred on November 20, 2014.

With this evidence, the burden shifted to Lu to show some evidence demonstrating that a genuine issue of fact existed with regard to ownership. See Rule 74.04(c)(2). Lu first asserts that the sale did not take place until December 4, because the Bill of Sale (Missouri Department of Revenue Form 1957) was not signed until December 4. But that same Bill of Sale reports the sale date as November 20, 2014. Lu's suggestion that title did not transfer until the Department of Revenue issued a new certificate of title to Son on December 8, 2014, is unavailing. Again, the certificate of title plainly lists the sale date as November 20, 2014. Lu is misguided in her argument because the Bill of Sale and Son's new certificate of title are part of the *registration* process of Son's new Ford and not indicia of the date of transfer. As this Court has clearly stated, "In the sale of a used vehicle, the operative fact in the transfer of title is the assignment of title rather than the registration of title or issuance of a new title certificate." Schultz v. Murphy, 596 S.W.2d 51, 53 (Mo. App. E.D. 1980). Son's registration of the Ford with the Department of Revenue necessarily occurred after the ownership of the Ford was transferred to him on November 20, 2014. Lu fails to raise a genuine dispute as to the date of the sale.[11]

Gunckel was not an insured under Father's policy because her status and use of the Ford did not qualify under any definition of *insured* in the insurance policy. Because Gunckel is not

---

[11] Lu's counsel also argues that a genuine issue of fact existed about whether Father gave Gunckel implied permission to use the Ford: Father sold the Ford to Son, and Son gave permission to Gunckel. This argument is untenable. "As a general rule ... the insured purporting to give consent must own the insured vehicle, or in any event have such an interest in it such as the right to possession and control of it as to be in a position to give permission." Haynes v. Linder, 323 S.W.2d 505, 510 (Mo. App. K.C. 1959). Again, Father did not own or have possession of the Ford on the day of the accident. In any event, under prong 2, once ownership passed the issue of Father's permission became moot because the Ford was no longer Father's insured auto.

9

an insured under Father's policy, the policy did not cover Gunckel's negligent driving or the resulting property damage to Lu's car.

## II.    The Applicability of the MVFRL

Because Lu is not an *insured* under Father's policy, we consider whether coverage nevertheless continued under the policy on the Ford on the date of the accident under the provisions of the MVFRL. Lu cites Section 303.210 of the MVFRL,[12] which requires ten days' notice to terminate or cancel a certified insurance policy. We start with a brief overview of the MVFRL for context and then address Lu's specific argument about Section 303.210.

### A.    Overview of the MVFRL

"An insurance clause violates public policy and is rendered unenforceable only to the extent it violates the Motor Vehicle Financial Responsibility Law." White v. Illinois Founders Ins. Co., 52 S.W.3d 597, 599 (Mo. App. E.D. 2001). The MVFRL is, for all practical purposes, a compulsory insurance law. Halpin v. Am. Family Mut. Ins. Co., 823 S.W.2d 479, 481 (Mo. banc 1992). Section 303.025 (Cum. Supp. 2013) provides the baseline rule: **"No owner of a motor vehicle registered in this state, or required to be registered in this state, shall operate, register or maintain registration of a motor vehicle, or permit another person to operate such vehicle, unless the owner maintains the financial responsibility** which conforms to the requirements of the laws of this state." Section 303.025.1 (emphasis added). Further, a non-owner may not operate an uninsured motor vehicle without maintaining his or her own financial responsibility. Id.

Subsection 2 permits the owner of a motor vehicle to "maintain" financial responsibility either (1) in a manner provided for in Section 303.160, or (2) with a motor vehicle liability

---

[12] Chapter 303, RSMo.

10

policy[13] that conforms to the requirements of the laws of Missouri. Section 303.025.2; White, 52 S.W.3d at 599. "Most owners and operators of vehicles undertake to satisfy the requirement by purchasing a motor vehicle liability policy." First Nat. Ins. Co. v. Clark, 899 S.W.2d 520, 522 (Mo. banc 1995). Under a regular motor vehicle liability policy, the insurance company furnishes an insurance card, which functions as proof that the insured has maintained the compulsory insurance. See Section 303.024 (Cum. Supp. 2013).

In some situations, the Director may require the owner or operator of a vehicle to file proof of financial responsibility. Section 303.160 provides, "Proof of financial responsibility **when required under this chapter** with respect to a motor vehicle or with respect to a person who is not the owner of a motor vehicle may be given by filing: (1) A certificate of insurance as provided in section 303.170 ...."[14] (Emphasis added.) Under Section 303.170, a written certificate of an insurance carrier certifies that a motor vehicle liability policy exists "**for the benefit of the person** required to furnish proof of financial responsibility." Section 303.170.1 (emphasis added). This certificate from the insurance company creates a "certified" insurance policy. See Wilson v. Traders Ins. Co., 98 S.W.3d 608, 615 (Mo. App. S.D. 2003). The Director has promulgated regulations requiring this certificate of insurance to be accomplished by filing a Form SR-22 with the Director. 20 CSR 500-2.300(4)(A).

Form SR-22, certifying that an owner or operator maintains financial responsibility, is sometimes required for individuals as a condition of license reinstatement after a license suspension. See Section 303.042.5 (Cum. Supp. 2013); 20 CSR 500-2.300(4)(A); Dilts v. Dir. of Revenue, 208 S.W.3d 299, 301–02 (Mo. App. W.D. 2006). Failing to maintain the compulsory insurance subjects the owner (or operator) of a motor vehicle to a license suspension. Section

---

[13] A "motor vehicle liability policy" is defined in Section 303.190.
[14] Section 303.160 provides additional ways to file proof of financial responsibility that are not relevant here.

11

303.041.1 (Cum. Supp. 2013). The Director may require "an individual to file a certificate of insurance as provided in section 303.170 ... or some other form of high-risk insurance in order to terminate the suspension" in "cases involving a motor vehicle accident where one or more parties involved in the accident were uninsured." See Section 303.042.5. The Director may require an individual to file Form SR-22 as a condition of reinstatement after some other types of license suspensions, such as after a suspension for driving while intoxicated. See Dilts, 208 S.W.3d at 301–02.

Thus, while the MVFRL mandates compulsory automobile insurance, the filing of a certificate of insurance—i.e. Form SR-22—with the Director is required only in some limited situations. Importantly, Form SR-22 certifies to the Director that the person has insurance for the benefit of that person. Section 303.170.1.

B.     Applicability of Section 303.210

Finally, we arrive at Section 303.210—the basis for Lu's claim that the MVFRL required the continuance of coverage under Father's policy during Gunckel's operation of Son's Ford on November 26, 2014. Section 303.210 states:

> **When an insurance carrier has certified a motor vehicle liability policy** under section 303.170 or a policy under section 303.180, the **insurance so certified shall not be cancelled or terminated until at least ten days after a notice** of cancellation or termination of the insurance so certified shall be filed in the office of the director of revenue.... (Emphasis added.)

Lu asserts that Section 303.210 preempts the terms of Father's policy because ten days' notice to the Director was required before ACIIE could terminate coverage on the Ford. Since Gunckel's accident occurred six days after Father sold the Ford, the ten-day notice could not have been satisfied. Lu argues that Father's insurance coverage, therefore, was still in force at the time of the accident.

12

Lu's argument fails because the plain language of Section 303.210 only applies to certified insurance policies. Although Lu maintains that all insurance policies fall within the notification requirements of Section 303.210 because all insurance policies must be certified, as explained above, Lu's all-encompassing position is incorrect. See supra; Wilson, 98 S.W.3d at 615 (observing, "Appellants concede that 'if the policy had not been certified, i.e., if there had not been an SR-22 filed, then the policy would have terminated' and there would have been no policy coverage on the date of the accident"); 20 CSR 500-2.300(4)(A).

The summary-judgment record is devoid of any evidence suggesting that the policy of insurance at issue in this case was a certified policy under the legislative dictates of Section 303.210. Lu did not inject the issue of certification by proffering or directing the court to any evidence that might suggest the existence of a genuine issue of fact as to whether the policy of insurance under which Lu seeks coverage was a certified policy. Even though our standard of review requires us to review the record in the light most favorable to Lu and accord Lu the benefit of all reasonable inferences, there is simply no evidence in the record to support even an inference that Father's policy was a certified policy subject to Section 303.210. See ITT Commercial Fin. Corp., 854 S.W.2d at 376. Thus, Section 303.210 does not apply here.

Because removing the Ford from coverage under Father's policy did not violate the MVFRL, we enforce the plain language of the policy. ACIIE did not insure against Gunckel's negligent use of Son's Ford under the plain language of Father's policy. Based on undisputed material facts, the trial court properly concluded that ACIIE was entitled to judgment as a matter of law on Lu's claim for equitable garnishment. Thus, summary judgment was proper and Lu's point is denied.

13

## Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, Judge

James M. Dowd, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

14